## WILL OF PATRICK CARROLL.

*November 11— November 30, 1880.*

PROBATE OF WILL: APPEAL TO CIRCUIT COURT. *(1) Contents of return. (2) Mode of trial in circuit court: province of jury. (3) Undue influence, what constitutes. (4) Costs out of estate.*

1. On appeal from a determination of the county court in respect to the probate of a will, the statute requires only a *certified copy*, and not the original will, to be returned to the circuit court (R. S., sec. 4033); though it might be proper to return the original where an inspection of it is rendered necessary by the nature of the objections to it.
2. The circuit court, in such cases, may determine all questions of fact, if it sees fit, without a jury (R. S., secs. 2843–4); and where it has made an order submitting special issues to a jury, subsequent orders and rulings

which merely amount to a revocation of such former order, and in pursuance of which the court determines all the questions by its own findings, are no ground of reversal.

3. The influence of persuasion or advice upon the mind of a testator, in determining the provisions of his will in favor of the person exercising such influence, or of his friend, is not necessarily *undue* influence *(Jackman Will Case,* 26 Wis., 104); but in the present case the court finds no proof even of such influence.

4. Although no legal ground, and scarcely any probable cause, existed for resisting the probate of the will in this case, yet, in consideration of the evident good faith of the contestant, and other circumstances, her taxable costs in this court are ordered to be paid out of the estate.

APPEAL from the Circuit Court for *Waukesha* County. The county court of said county having admitted to probate an instrument purporting to be the last will and testament of Patrick Carroll, deceased, an appeal was taken from that order to the circuit court by *Mary Carroll Clancy,* a daughter and heir-at-law of the decedent. The original will was not included in the return made by the county court to the circuit court, but only a copy thereof; but the original appears to have been produced by the county judge at the trial, and identified by witnesses. At the close of the evidence the circuit judge filed his findings of fact, by which he found, among other things, that said decedent "duly subscribed and executed his said will as required by law, and that he was of sound and disposing mind and memory and was not under undue influence" at the time of its execution. Upon the facts found, he held that the will was entitled to probate, and judgment was rendered accordingly; from which the contestant appealed.

For the appellant there was a brief by *Dey & Friend,* her attorneys, with *A. R. R. Butler* of counsel, and oral argument by *Mr. Dey.* They argued thus, *inter alia:* 1. Written documents are not before the court on simple proof of their identity. They must be offered in evidence, and read, or the reading waived. *Clapp v. Wilson,* 5 Denio, 285. So, on the trial of the validity of a will, the will itself should be pre-

Will of Patrick Carroll.

sented to the court in the same manner as it is presented to the county judge who passes upon it in the first instance. It is necessary to a correct application of the testimony by the court and jury, that the instrument be before them. *Lucas v. Parsons,* 24 Ga., 640; *In re Wilson,* 8 Wis., 172. The trial in the circuit court is a trial *de novo.* R. S., sec. 4034; *Cent. Bank of Wisconsin v. St. John,* 17 Wis., 157. It rests upon the proponent to make out a *prima facie* case. Gary's Probate Law, 76. The will not having been made a part of the return of the county court on appeal, and not having been properly presented to the circuit court, it was not made matter of record in the latter court, and could not be passed upon thereby, or by this court upon appeal. And, not having been offered in evidence, it could not be incorporated in the bill of exceptions. A new trial must therefore be granted. 2. The court erred in not taking a verdict of the jury upon the issues directed to be so tried. The course of proceeding upon the trial of such issues is the same as that adopted in ordinary trials at law; and such was the course of trial under the former practice, except where the court of chancery prescribed some special directions upon the subject. 1 Van. Santv. Eq. Pr. (2d ed.), 501; 1 Barb. Ch. Pr., 451. The order of the court directing certain issues to be tried by a jury is similar to the interlocutory order or decree under the old chancery practice. 1 Van Santv., 513. But without setting aside the order or submitting the issues to the jury, or a trial by the court, the court made a final decree, deciding the merits of the case.

For the respondent there was a brief by *T. C. Martin* and *D. H. Sumner,* and oral argument by *Mr. Sumner.*

Orton, J. The original will need not be returned to the circuit court on the appeal. The statute provides only for "a certified copy of the record and proceedings." R. S., sec. 4033. It might be proper for the county court to transmit to the circuit court, as a part of the return, the original will, when

objections to its validity are predicated upon the manner of its execution, and the inspection of the original is necessary. *In re Wilson*, 8 Wis., 172. But this was not such a case.

It appears from the record returned to this court, that all of the issues upon which the contest of the probate was tried and determined in the county court, were, by the order of the circuit court, submitted to a jury, but upon the trial the court said to the parties: "You may confine your testimony to the questions of soundness of mind and undue influence. The others will be for the court." This was a substantial modification of the order of submission, if not a revocation of it, and a new order informally made.

When the testimony had all been given, the counsel of the proponent suggested to the court that there was no testimony whatever to show that the testator was of unsound mind, or made his will under undue influence, to be submitted to the jury; and the circuit court so held, and ruled that the whole question be taken from the jury, and thereupon found, as a question of law upon the findings of fact, that the will was entitled to probate, and the order of the county court to that effect was affirmed.

This disposition of the matter by the court was tantamount to a formal revocation of all orders of submission of any of the issues to a jury, and was clearly within the power and discretion of the court. Submitting special issues to a jury in such a case "is strictly analogous to the course pursued in courts of chancery when a feigned issue is awarded," and "is subject to the discretion of the court." "The court may, if it sees fit, determine all questions of fact, as well as of law, without the intervention of a jury;" and the verdict, when taken, is not conclusive and binding upon the judgment of the court, and is merely advisory, and may be entirely disregarded by the court in making its own findings of the facts, if the court, in its discretion, deems best to do so. R. S., secs. 2843, 2844. The statute authorizing such a submission, the analo-

gous practice of courts of chancery, and the decision of this court in *In re Jackman's Will*, 26 Wis., 104, fully confirm this view of the question. We find no error, therefore, in the course taken by the circuit court in ruling that there was no evidence to go to the jury upon the issues, and that the contestant had utterly failed in her proofs, and in discharging the jury from the case.

The remaining questions are those of fact: Was the will duly and properly executed, and freely and voluntarily, and without undue influence? The evidence tending to prove the negative of these questions is very slight, if there was any at all; and, on the other hand, the evidence tending to establish the affirmative is clear, positive and satisfactory. Thomas C. Martin, who drew the will and was one of the witnesses to its execution, was and is a gentleman of intelligence, and of unimpeached character and credibility. His testimony is clear and explicit, that the request to him to draw the will came directly from the testator while in the possession of all of his mental faculties unimpaired; that the testator gave directions as to the drawing of his will, unprompted by any one; and that he, Martin, made a memorandum of such directions and drew the will according thereto, read the will to the testator, and, in the presence and hearing of the other witness, saw the testator make his mark within his signature thereto, and took charge of the will when executed. This evidence was substantially the same as to both wills, and the testimony of the other witness, Cornelius McMahon, was substantially the same. It is true that McMahon stated that he could not tell which was the first will or the last, but he was certain that he witnessed the execution of both. The testator was old and feeble, but his testamentary capacity was abundantly proved by the testimony of both these witnesses, as well as that of the Hon. Wm. Blair, who had at that time the very best means of knowing it.

The evidence tending to show undue influence comes partly from the contestant, a daughter of the testator, and consists of certain casual remarks made by the testator that he should make, or had made, certain provisions in her behalf, or which encouraged her to think that he would do so or had done so. This witness, however, testified that the testator informed her at one time that he had made his will, but he did not intimate what it contained, and she did not inquire. The other facts bearing on this question were, that William Carroll, the son of the testator, and who is the principal legatee of the will, had for a long time lived with the testator, and had much to do with the management of his property, and had great influence with him; and that Mr. Martin, who drew and witnessed the will, had once been a partner with William in some kind of business, and was his special friend. But there was not a particle of proof that either William or Martin ever dictated, counseled, advised or directly influenced the testator to make such a disposition of his property; but even if they had done so, unless such influence in some degree destroyed the free agency of the testator, it would not be *undue* influence. "It is not enough that the testator is dissuaded by solicitations or argument from disposing of his property as he had previously intended; he may yield to the persuasions of affection or attachment, and allow their sway to be exerted over his mind; and in neither of these cases would the law regard the influence as *undue*. To amount to this, it must be equivalent to moral coërcion; it must constrain the subject to do what is against his will, but which, from fear, the desire of peace, or some other feeling, he is unable to resist; and when this is so, the act which is the result of that influence is vitiated." This is the language of one of the many authorities cited and approved by Mr. Justice COLE in the *Jackman Will Case, supra,* whose opinion in that case is so full, able and exhaustive on this question that further reference to authorities here is unneces-

sary. Giving the evidence in this case all possible weight, it falls infinitely short of this standard in establishing the fact of undue influence.

Holding, as we do, that there was no legal ground for resisting the probate of this will, and scarcely any probable cause for such resistance, and that such appeals ought not to be encouraged by the allowance of costs out of the estate, yet, in tender consideration of the evident good faith of the contestant, and of her firm belief that the will of her father had been unduly influenced by her brother William, and of her painful disappointment in not realizing her expectations, we think her taxable costs in this court may properly be paid out of the estate.

*By the Court.* — The judgment of the circuit court is affirmed; the taxable costs in this court to be paid out of the estate of Patrick Carroll, deceased.