Estate of Culver: Hydanus, Appellant, v. McMahan and others, Respondents.

*February 5—March 3, 1964.*

666

670

For the appellant there was a brief by *Riley & Pierce,* and oral argument by *Michael B. Torphy, Jr.,* all of Madison.

For the respondents there was a brief by *Ted C. Boyle, F. D. Shuttleworth,* and *William E. Johnson,* all of Madison, and oral argument by *Mr. Boyle* and *Mr. Johnson.*

GORDON, J. The objectors proved by clear, satisfactory, and convincing evidence that the will of Katherine Culver was the result of undue influence. The objectors proved the presence of the four elements referred to in *Will of Freitag* (1960), 9 Wis. (2d) 315, 317, 101 N. W. (2d) 108. In addition, we believe that the finding of the trial court that Mrs. Culver was under insane delusions at the time she executed her will is not against the great weight and clear preponderance of the evidence. Accordingly, it follows that the order of the county court sustaining the objections and denying probate of the will must be affirmed.

That Mrs. Culver was susceptible to undue influence is fully supported by the record. She was eighty-four years of age and suffering from arteriosclerosis. She had been hospitalized on three occasions during the six months immediately preceding the execution of her will (December 10, 1960, to January 1, 1961; March 11, 1961, to March 22, 1961; April 23, 1961, to April 28, 1961). Shortly after the execution of her will, she was again hospitalized (September 8, 1961, to September 28, 1961).

Dr. Straughn testified that she was suffering from paranoia in September, 1961, although he was not able to designate her precise condition at the time the will was drafted in June, 1961. The doctor described her mental competency as a "variable picture" and added that he "couldn't be sure that she was competent." However, Dr. Straughn did testify that "she might indicate competency at times."

Mrs. Culver's husband died in 1960, and her condition deteriorated thereafter. Some of her characteristics could be described as the frequent concomitants of growing old. However, other aspects of her demeanor suggested abnormal mental and physical decline. Mrs. Culver was exceedingly careless about her nutrition; what little food she kept in the house was spoiled. She attired herself in an unseemly fashion. She adopted a penurious standard of living. She claimed that she had visits from her deceased husband. She expressed the opinion that her close relatives were stealing from her. The testimony raises serious doubts as to her ability to read during the period surrounding the time she executed her will.

To contradict the existence of any susceptibility to influence, the proponent of the will points to the obstinancy which Mrs. Culver exhibited in connection with her previous refusal to make a will and her steadfast unwillingness to move to a nursing home.

From all the testimony, we think it is clear that Mrs. Culver's general deterioration had allowed her to become susceptible to undue influence. Judge FLOM's finding to such effect is generously supported by the testimony.

Mrs. Hydanus was in a position to have exercised improper influence upon Mrs. Culver, and the record establishes that she had a disposition to do so. Although Mrs. Hydanus had seen Mrs. Culver on only eight or 10 occasions between 1941 and 1960, she stayed with her on June 15 and 16, 1961, and again on June 20 and 21, 1961. She was personally present on both occasions when Mrs. Culver executed wills in June, 1961. It was Mrs. Hydanus who arranged for the presence of the attorney who prepared the will, and also Mrs. Hydanus took possession of the will after its execution. Further, she procured a power of attorney from Mrs. Culver, even though Mrs. Hydanus lived in Prairie du Chien and would not be readily available to function as an agent for Mrs. Culver, whose home was in Madison.

The trial court, in evaluating the demeanor of Mrs. Hydanus as a witness, stated that "her testimony was given in great reluctance and carefully guarded. Many times the court felt that a more honest person would be much more descriptive." Judge FLOM went on to conclude that portions of her testimony were incredible. We find no reason to supplant the trial court's negative reaction to Mrs. Hydanus' testimony. Perhaps this is the type of individual that John Webster had in mind when he wrote, over three hundred years ago:

"When women go to Law, the Devil is full of Business."
—The Devil's Law-Case (1619).

It is obvious that the proposed will itself reflects a result which might be attributable to undue influence. Although Mrs. Culver left four brothers and three sisters who sur-

vived her, as well as a large number of nephews and nieces, the provisions of the will cut off all but a very few of her relatives with one dollar. The estate was approximately $30,000, yet no blood relative received more than $300. There were two charitable bequests of $1,000 each, but it is undeniable that the transfer of the residue to Mrs. Hydanus was a remarkable and unnatural bequest which raised a red flag of warning.

The appellant has raised a procedural objection with reference to the finding of insane delusions. This contention on the part of the appellant is based upon the fact that the objections to the admission of the will to probate did not specifically assert the claim that Mrs. Culver had insane delusions. However, the objections did allege that the decedent was not of sound mind and did not have sufficient mental capability to make a will.

The medical testimony in this case, together with the details of Mrs. Culver's bizarre demeanor, warranted the trial court's conclusion regarding insane delusions, and we find no merit to the contention of surprise advanced by the appellant. Mrs. Culver's protestations that her brothers and sisters were stealing from her might reasonably be attributable to the paranoia which Dr. Straughn observed a few months after the execution of the will. The trial judge concluded that Mrs. Culver had an insane delusion that nobody cared for her and that people stole from her. She claimed that her brothers were wastrels who would dissipate anything she might bequeath to them. The finding that Mrs. Culver executed her will under these delusions is appropriate upon this record.

The trial judge's conclusions that Mrs. Culver's family was normally solicitous of her and cared for her when she was sick are also warranted. *Will of Riemer* (1957), 2 Wis. (2d) 16, 85 N. W. (2d) 804. We find no error.

*By the Court.*—Order affirmed.