ESTATE OF McGONIGAL: KEHRBERG, Appellant, v. PRIBNOW and another, Respondents.

*No. 88. Argued February 5, 1970.—Decided March 3, 1970.*
(Also reported in 174 N. W. 2d 256.)

For the appellant there was a brief and oral argument by *Hugh G. Haight* of Neillsville.

For the respondents the cause was submitted on the brief of *Nikolay, Jensen & Scott* of Medford.

WILKIE, J. The four elements which must be established by the objector in order to void a will for undue influence have been stated by this court many times. In the recent case of *Estate of Brehmer*,[1] these elements, which must be proved by clear and convincing evidence, were listed in capsule form as:

"*Susceptibility*—a person who is susceptible of being unduly influenced by the person charged with exercising undue influence.

"*Opportunity*—the opportunity of the person charged to exercise such influence on the susceptible person to procure the improper favor.

"*Disposition*—a disposition on the part of the party charged to influence unduly such susceptible person for the purpose of procuring an improper favor either for himself or another.

---

[1] (1969), 41 Wis. 2d 349, 164 N. W. 2d 318.

*"Coveted Result*—a result caused by, or the effect of, such undue influence. . . ." [2]

The court in *Brehmer* also stated:

"The burden is upon the objector to prove by clear, satisfactory and convincing evidence that the will was a result of undue influence. However, in recognition of the difficulty of proving undue influence an additional rule is applicable. When three of the four elements are established by the required proof, only slight evidence as to the fourth element is necessary to prove its existence. . . ." [3]

As is not unusual in an "undue influence" case there is no disagreement about the basic legal rules governing proof of whether the will proposed for probate was the result of undue influence. The only issue here is whether the trial court's finding that there was undue influence which voids the will is against the great weight and clear preponderance of the evidence. [4]

Before analyzing in detail the proof as to each of the four elements of undue influence, a brief recital of the more important facts setting the stage for the execution of the 1966 will would be appropriate.

On March 26, 1960, the testatrix, a widow living in Loyal, Wisconsin, executed a will which had been drafted by Attorney Wayne W. Trimberger of Neillsville. The will was drafted immediately before testatrix and ap-

[2] *Id.* at page 351. *See also, Estate of Milbrot* (1969), 43 Wis. 2d 108, 168 N. W. 2d 129, and cases cited therein.

[3] *Estate of Brehmer, supra,* footnote 1, at pages 351, 352.

[4] In her brief, the respondent argues the trial court's determination that there was undue influence can be supported under the theory of a confidential relationship existing between testatrix and Hattie Kehrberg. The trial court made no finding on this point and it appears from the record that this was not raised below. This court need not in that situation consider it at this time. In any event, it appears that there was no confidential relationship established on the record here. *See Will of Cooper* (1965), 28 Wis. 2d 391, 137 N. W. 2d 93.

pellant, Hattie Kehrberg, left on a trip to Europe. In this will, Mrs. McGonigal, after making several specific bequests, divided the rest, residue and remainder of her property as follows:

30 percent to St. Anthony's Catholic Church of Loyal, Wisconsin
18 percent to Nora Voight
18 percent to Meta Pribnow
10 percent to Maude Volk
14 percent to Irene Ostrander
10 percent to Hattie Kehrberg

The will also appointed Percy Voight of Loyal to act as executor and directed him to retain Attorney Trimberger to probate the will.

All those who took under this will were friends rather than relatives of testatrix.

On June 14, 1966, Mrs. McGonigal, who was then eighty-three years old, asked Hattie Kehrberg to write to Attorney Trimberger and request a copy of the 1960 will. Attorney Trimberger sent a copy of the will to Mrs. McGonigal. After a series of letters between Trimberger and Hattie Kehrberg, who was writing for and apparently at the direction of the testatrix, an appointment between the lawyer and Mrs. McGonigal was arranged for July 18, 1966, to discuss some proposed changes in her will. Attorney Trimberger arrived at testatrix's home and found Hattie Kehrberg and testatrix there. Hattie Kehrberg had known Mrs. McGonigal for about fifty years and lived across the road from her.

A discussion concerning Mrs. McGonigal's will began. At that time, Hattie Kehrberg started to leave the room, but testatrix told her to stay. She did, but moved to the rear of the room or about 15 feet from where testatrix and Trimberger were talking. Miss Kehrberg testified she could not hear the discussion between Trimberger and testatrix. Attorney Trimberger returned to his office and mailed the drafted will to Mrs. McGonigal.

Several days later, on July 25, 1966, Hattie Kehrberg and her brother, Gerhard Kehrberg, who lived in the same building as Hattie, drove Mrs. McGonigal, at her request, to Attorney Trimberger's office in Neillsville.

They waited in the attorney's waiting room while Mrs. McGonigal and Trimberger discussed her proposed will in his private office. Attorney Trimberger then called Dr. Horace Frank of Neillsville and made an appointment for him to examine Mrs. McGonigal. While Hattie and her brother waited in his waiting room, Trimberger escorted Mrs. McGonigal to Dr. Frank's office.

Dr. Frank gave her a partial physical examination by checking her blood pressure, heart, and radial arteries. He also asked her several questions about her family and recent and late events. This examination lasted approximately forty-five minutes, after which time Mrs. McGonigal signed her will in the presence of Dr. Frank and Attorney Trimberger as witnesses.

This will, dated July 25, 1966, after setting forth some specific bequests of jewelry and silverware, gave the rest, residue and remainder of her property to ". . . my good friends, Hattie Kehrberg and Gerhard H. Kehrberg, brother and sister, share and share alike."

Both before and after the execution of the will Hattie Kehrberg spent most of her evenings with Mrs. McGonigal at Mrs. McGonigal's home watching television with her. Mrs. McGonigal also frequently visited in the Kehrberg home, both Hattie and Gary having separate residences in the same building across the road from Mrs. McGonigal's home.

Mrs. McGonigal was injured in an automobile accident in January of 1967. Thereafter, she moved to a convalescent home where she died on May 26, 1967.

The objector to the will dated July 25, 1966, is Meta Pribnow, who had known Mrs. McGonigal for twenty-five years.

*Susceptibility.*

The testimony presented on susceptibility is conflicting. It was established that testatrix was an eighty-three-year-old widow at the time she executed the questioned will. Several months prior to this, at the urging of her friends, including Hattie Kehrberg, she had executed a power of attorney, giving Paul Davel, a banker in Loyal, Wisconsin, the power to conduct all business matters in her behalf, to pay bills and handle all monetary matters concerning her general welfare. This document was signed by Mrs. McGonigal on March 2, 1966.

Testimony from several witnesses tended to establish that the testatrix, in the two years prior to this, had been experiencing increasing difficulty in handling her business affairs, although prior to this time she had been a good business woman. When Davel took over her business affairs she was a year delinquent in her taxes. She had also neglected to pay her electricity bill for a period of four months. There was testimony that Mrs. McGonigal thought she did not have to pay her bills because she was over sixty-five years of age. Several friends and neighbors had seen her cutting the lawn in front of her house with a scissors and when questioned about this she replied that she did it because she could not afford to hire someone to mow it.

There was also testimony from parties who would benefit by the 1960 will that Mrs. McGonigal was no longer a good housekeeper and had begun to get sloppy in her personal habits. Mr. Davel testified that the testatrix did not eat well and that he had arranged for her to take her meals in a restaurant and he would pay the bill at the end of each month. Davel also testified that he thought Mrs. McGonigal could have been influenced to execute a will in July of 1966 which was contrary to her wishes. But then he subsequently testified that she was not easily influenced and that she was headstrong.

Similarly, the priest from St. Anthony's church also testified that she had a mind of her own and that she resisted his efforts to have her enter a convalescent home.

Although much of the testimony presented in this case is contradictory regarding the testatrix's susceptibility to influence, on the whole record the circumstantial evidence indicates that the trial court was justified in finding that she was susceptible. This conclusion is proper even though age and mental deterioration are not necessarily determinative of susceptibility.[5] The fact that testatrix could be talked into executing a power of attorney, thereby turning all her business affairs over to her banker, is indicative of her receptiveness to others' suggestions. The fact that she could be contrary and head-strong on occasions does not offset this.

Also, the doctor and attorney both testified that she was not confused or subject to undue influence at the time of the execution of the will. While the importance of this type of testimony cannot be minimized,[6] it is merely a factor which the trial court should consider in reaching its decision.

We are satisfied that the trial court's finding that the testatrix was susceptible of being unduly influenced is not against the great weight and clear preponderance of the evidence.

### Opportunity.

The question for consideration at this point is whether Hattie Kehrberg had the opportunity to influence the testatrix. The evidence on this point is clear—she had.

[5] See Estate of Phillips (1961), 15 Wis. 2d 226, 112 N. W. 2d 591; but see, Estate of Culver (1964), 22 Wis. 2d 665, 126 N. W. 2d 536. See also, Comment, 1968 Wisconsin L. Rev. 569 at 578.

[6] See Will of Grosse (1932), 208 Wis. 473, 243 N. W. 465. See also, Will of Sowka (1945), 247 Wis. 498, 19 N. W. 2d 898; Will of Valley (1930), 202 Wis. 434, 232 N. W. 845.

Hattie was a neighbor living across the street and had been a friend of the testatrix for fifty years. In addition, her own testimony indicates that she spent practically every evening with Mrs. McGonigal watching television. Hattie Kehrberg clearly had the opportunity to influence testatrix, and this influence could easily be in force at the time of the execution of the will, even though neither Hattie nor her brother were physically looking over Mrs. McGonigal's shoulder as she executed the will.[7] The finding that there was opportunity to influence testatrix is not against the great weight and clear preponderance of the evidence.

## Disposition.

In evaluating the evidence in our review of the trial court's finding that Hattie Kehrberg had the disposition to exercise undue influence, our attention is focused on the character and activities of Hattie to determine whether her conduct was designed to take unfair advantage of the testatrix. Disposition to unduly influence means more than a desire to obtain a share of an estate. ". . . It implies a willingness to do something wrong or unfair, and grasping or overreaching characteristics." [8]

Clearly, this question presents the most difficult determination of this case and the weakest element as far as proof is concerned. There is nothing wrong with aiding and comforting a failing testator; indeed, such activity should be encouraged. The fact that the testator is wealthy should have no effect on this encouragement.

The respondents argue that a grasping disposition on the part of Hattie Kehrberg is illustrated by her taking

---

[7] See *Estate of Yahn* (1951), 258 Wis. 280, 45 N. W. 2d 702.

[8] *Estate of Brehmer, supra*, footnote 1, at page 356, citing *Estate of Knutson* (1957), 275 Wis. 380, 387, 82 N. W. 2d 196. *See also, Will of Schaefer* (1932), 207 Wis. 404, 241 N. W. 382.

possession of $530 in the testatrix's home shortly after Mrs. McGonigal's death. Hattie testified that, at first, she intended to keep a portion of this money for herself and it was only after Percy Voight convinced her that she returned it.

However, the circumstances surrounding this action are far from clear on the record here. In fact, the testimony indicates that the money was found in an envelope with Hattie's name written on it. It is understandable that Hattie would take this as her own.

Furthermore, the record does not, as the objector's brief suggests, indicate that Hattie was the one responsible for initiating the execution of a new will. There is no evidence to indicate that Hattie played a catalytic role in the execution of the new will. Nor is there any indication that Hattie ever discussed the provisions of the will with testatrix or that Hattie even knew of the provisions.[9]

Similarly, the lawyer who drafted the 1960 will was the same one who drafted the 1966 will. So it cannot be said that Hattie arranged for a lawyer of her own choice to draft the latter will.

The record here discloses that Hattie's actions are perfectly consistent with her position as a good friend of the testatrix. These are actions of a friend concerned for the welfare and solicitous to the needs of Mrs. McGonigal.

While the trial court's entire finding on the element of disposition on the part of Hattie Kehrberg to exercise undue influence is as follows: "That the circumstances and the demeanor of the witness in the witness stand, including her own testimony, shows disposition to exercise undue influence," we find nothing in the record to support that observation nor has the trial court furnished any

---

[9] *See generally, Will of Grosse, supra,* footnote 6; *see also Will of Dobson* (1951), 258 Wis. 587, 46 N. W. 2d 758.

details as to why it had such a negative reaction to Hattie's testimony.[10]

Thus, we are satisfied that as to this element, the objector has failed to meet her burden of proof by clear and convincing evidence and, therefore, the trial court's finding that Hattie had the disposition to influence testatrix unduly is against the great weight and clear preponderance of the evidence.[11]

The importance of the trial court's finding with reference to the fourth element—coveted result—is emphasized by the well-established rule in cases seeking to prove undue influence that requires less proof of the fourth element when the other three elements are established.[12] If the evidence establishes that a coveted result was obtained, then three of the four elements of undue influence have been established and the proof needed to establish disposition may be reduced. Thus consideration of the fourth element—coveted result—is pivotal.

### Coveted Result.

The question for consideration here is whether the result obtained was caused by or was the effect of undue influence. What is under scrutiny here is the naturalness or expectedness of the bequest.

In *Estate of Culver*,[13] where no blood relative (there were four brothers and three sisters) received a bequest of more than $300 under the proposed will disposing of a $30,000 estate, this court felt that it was obvious that the proposed will itself reflected a result which might

---

[10] *E.g.*, an illustration of support in the record for such an observation by the trial court in a will contested on the basis of undue influence, *see Estate of Culver, supra,* footnote 5, at page 672.

[11] *See generally, Will of Faulks* (1945), 246 Wis. 319, 17 N. W. 2d 423.

[12] *See Estate of Brehmer, supra,* footnote 1.

[13] *Supra,* footnote 5.

have been attributable to undue influence and ". . . the transfer of the residue to [the proponent] was a remarkable and unnatural bequest which raised a red flag of warning." [14]

In the instant case there is nothing to raise the "red flag of warning." There is no familial relationship between any of the concerned parties. Therefore, testatrix's dispositive plan which favors one friend over another cannot really be called unnatural. Hattie had been a friend of Mrs. McGonigal for over fifty years. There is no testimony in this record as to the relative wealth of Hattie Kehrberg as compared with Meta Pribnow and others who would benefit under the 1960 will. It may well be that Hattie needed money more than Meta Pribnow and that Mrs. McGonigal was aware of this and took this into consideration when drafting her will. [15]

Moreover, on the record here Hattie can hardly be termed an interloper who came upon the scene in recent years and displaced the natural objects of a testator's bounty. The testatrix is not required to show cause why her will was drafted as it was. [16]

The portion of the 1966 will which might be interpreted as unexpected was the provision for Gerhard Kehrberg. However, the testimony indicates that he had been kind to the testatrix and had known her for many years and had taken her to dinner several times. In any event, the mere fact that the result may be unexpected does not prove undue influence. In the absence of undue influence, testatrix's expressed dispositive intent should be given effect.

In undue influence determinations the emphasis is on the facts surrounding the situation. Legal precedent often

---

[14] *Estate of Culver, supra,* footnote 5, at page 673.

[15] *See generally, Will of Winnemann* (1956), 272 Wis. 643, 76 N. W. 2d 616.

[16] *Estate of Knutson, supra,* footnote 8.

is of little value. Since such great emphasis is placed on the facts, it is a great benefit to have adequate findings made by the trial court. In addition, much of the proof is often by way of circumstantial evidence. Since this is true, the facts from which the trial court drew its inferences and based its conclusions take on added importance. Unfortunately, the trial court in the instant case entered very sketchy findings. To give proper regard to the trial court's better position to determine the facts, the facts upon which the trial court relies and the inferences drawn therefrom should be stated.

In the instant case the findings of the trial court that Hattie Kehrberg had the disposition to unduly influence Blanche McGonigal and that the coveted result was obtained, are against the great weight and clear preponderance of the evidence, and the 1966 will should therefore not have been denied probate.

*By the Court.*—Judgment reversed.