ESTATE OF ELVERS: BERMKE and others, Appellants, v. SECURITY FIRST NATIONAL BANK OF SHEBOYGAN, Executor, and others, Respondents.

*No. 129. Argued September 8, 1970.—Decided October 6, 1970.*
(Also reported in 179 N. W. 2d 881.)

For the appellants there were briefs by *Bonk, Lutz & Hertel* of Chilton, attorneys, and *Paul Axel* of Sheboygan, of counsel, and oral argument by *Robert W. Lutz.*

For the respondents Florence Baxter and James Richter there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *John C. Whitney.*

For the respondent First Congregational Church of Sheboygan there was a brief by *Holden, Halvorsen & Bjork* of Sheboygan, and oral argument by *Robert H. Halvorsen.*

HALLOWS, C. J.   The only issue on this appeal relates to the sufficiency of the evidence on the issue of undue influence.   Because, after a careful examination and analysis of the evidence, we agree with the trial court that the proof was not sufficient, no extended discussion of the evidence will be made.

Prior to his death Alvin F. Elvers had been the proprietor of a small family-owned corporation in Sheboygan.   The business had been started by his father Henry Elvers and an uncle Arthur Elvers.   Upon the death of his father, the business was operated by Elvers, his mother and his uncle.   Following the death of his mother in 1962 and of his uncle in 1965, Alvin F. Elvers became the sole owner of the corporation and was its president and treasurer.   James Richter, who started to work for the corporation as a teen-ager in 1957, was vice-president and Mrs. Florence Baxter, who began working for the corporation on a full-time basis in 1962, was the secretary.

Alvin F. Elvers' estate was comprised primarily of his interest in the corporation and assets representing an inheritance from his mother and from his uncle.   Under the terms of the will, Elvers bequeathed all the shares of stock in the corporation to respondents James Richter and Florence Baxter equally; all articles of personal use and effects to Florence Baxter and the automobiles to James Richter.   The remainder of the estate was bequeathed to the respondent Security First Na-

tional Bank of Sheboygan, as trustee. Mr. Richter and Mrs. Baxter were to receive the income of the trust during their lives and upon their deaths the respondent First Congregational Church of Sheboygan was to receive the corpus.

We have said many times that undue influence must be proved by clear, convincing, and satisfactory evidence. *Will of Freitag* (1960), 9 Wis. 2d 315, 317, 101 N. W. 2d 108; *Will of Cooper* (1965), 28 Wis. 2d 391, 137 N. W. 2d 93; *Estate of Brehmer* (1969), 41 Wis. 2d 349, 164 N. W. 2d 318. In those cases we pointed out that the four elements must be proved to establish undue influence and we labeled them susceptibility, opportunity, disposition, and coveted result.

The objectors' claim that Florence Baxter exercised undue influence rests for the most part on circumstantial evidence, but this is not unusual in undue-influence cases and often such evidence is as convincing as direct testimony. However, in this case, although there is some evidence of opportunity for Florence Baxter to unduly influence Elvers, the totality of the evidence falls far short of proving undue influence. It is true the will excluded the aunt and the cousins from the estate, but other than their being the nearest relatives, there is no reason advanced why Elvers should leave his estate to them. The failure to leave an inheritance to cousins and an aunt is not so remarkable or unnatural as to raise a "red flag of warning" to the court. *See Estate of Culver* (1964), 22 Wis. 2d 665, 673, 126 N. W. 2d 536. A coveted result includes obtaining for oneself or for another a benefit such person would normally not receive and which results in an injustice to another. *Will of Cooper, supra.* True, they were contingent beneficiaries in a prior will and while a change of beneficiary is of some significance, it is not controlling that the change was caused by undue influence.

No evidence was adduced that Mr. Richter or the First Congregational Church of Sheboygan influenced or was disposed or had any opportunity to influence the making

of this will. Elvers could have taken care of his two co-workers and employees as he did and still have taken care of the objectors by making them the beneficiaries of the corpus of the trust instead of the First Congregational Church of Sheboygan. True, no great motive was shown why a legacy was made to the church although to Elvers the fact his wife served there as an organist for many years might well have been sufficient reason for him to make the church a beneficiary.

A great deal of evidence relates to Mrs. Baxter's disposition to influence Elvers in business affairs, but most of this evidence concerned activities subsequent to the execution of the will. To render a will invalid on the ground of undue influence, such influence must operate at the time the will is executed. *Estate of Yahn* (1951), 258 Wis. 280, 282, 45 N. W. 2d 702; *Estate of Brehmer* (1969), 41 Wis. 2d 349, 164 N. W. 2d 318. Elvers' health, disposition, and nature were not proved to be such that he was susceptible to influence of Mrs. Baxter in particular or women in general. Not all influence is undue. We stated in *Estate of Perssion* (1963), 20 Wis. 2d 537, 543, 123 N. W. 2d 465:

". . . All humanity is susceptible to influence—that is the nature of man. But all influence is not wrong or undue; it is often quite good. 'Influence becomes undue when it commands or compels the exercise of volition on the part of the person subject to such influence so that the result is the accomplishment of the will or purpose of the one using influence rather than, in fact, the will or purpose of the donor. The nature of the influence is in the form of mental persuasion or compulsion but not necessarily fear, which is the element of duress. The degree of persuasion which is unfair depends on a variety of circumstances. Both permissible influence and undue influence may induce a transaction. The distinction is whether the result was produced by influencing a freely exercised and competent judgment or by dominating the mind or emotions of the person susceptible to the influence.' *Kuehn v. Kuehn* (1960), 11 Wis. (2d) 15, 24, 104 N. W. (2d) 138."

The test is whether the free agency, the free will and volition of the testator has been destroyed or directed by the overpowering influence of another. *See Will of Faulks* (1945), 246 Wis. 319, 17 N. W. 2d 423.

This will was prepared by an attorney selected by Elvers and one who had no connection with Mrs. Baxter. Elvers went alone to the attorney over a three-week period to discuss and execute the will and it stood unchanged for a year and a half before his death. While Elvers may have been motivated, we must agree with the trial court that the evidence simply was not sufficient to meet the burden of clear, convincing, and satisfactory evidence to prove the will did not freely represent Elvers' intentions unaffected by undue influence.

The objectors claim that since undue influence is a question of fact the issue must be tried by a jury. It has been well settled in this state for one hundred years that there is no right to a trial by jury in a will contest. *Will of Jackman* (1870), 26 Wis. 104, 107, 111; *Will of Carroll* (1880), 50 Wis. 437, 440, 7 N. W. 434; *Will of Weidman* (1926), 189 Wis. 318, 321, 207 N. W. 950. Probate originated in early ecclesiastical courts in respect to personal property and in the King's courts in respect to real estate and there was no right to a trial by jury. *See Will of Jackman, supra,* at page 107. The constitution does not grant such right and our legislature has not by statute granted such a right in probate. There is no merit in the argument that every fact question must be tried by a jury.

Although the execution of the will was an issue, the attorney, who drafted the will and who was a law partner of the attorney who tried the action, took the witness stand. The court limited his testimony to facts relating to the execution of the will and later stated the issue was not much contested. It is improper for an attorney to continue to conduct litigation when he knows in advance of trial that his testimony will be required and this requirement is not satisfied by having his partner try the case. *See* American Bar Association's Canon of

Professional Ethics No. 19; *Will of Cieszynski* (1932), 207 Wis. 353, 241 N. W. 364. If an attorney is to be a witness he is under a duty to withdraw from the litigation and this withdrawal must be complete in the sense that his client is free in every sense of the word to retain other counsel. *Roys v. First Nat. Bank* (1924), 183 Wis. 10, 20, 197 N. W. 237.

In *Lorenz v. Wolff* (1970), 45 Wis. 2d 407, 173 N. W. 2d 129, this court made an analysis of the cases interpreting Canon of Professional Ethics No. 19 of the American Bar Association. This rule has now been reinstated in the Code of Professional Responsibility as DR 5–102.[1] It is not in violation of professional ethics

[1] "DR 5–102 **Withdrawal as Counsel When the Lawyer Becomes a Witness.**

"(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101 (B) (1) through (4).

"(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

• • • • • • •

"DR 5–101 **Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.**

". . .

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that sub-

for an attorney to testify on purely formal matters, *Kink v. Combs* (1965), 28 Wis. 2d 65, 135 N. W. 2d 789 (custody of a dress), or in an uncontested probate of a will. But here, the execution was put in issue and whether it was to be vigorously contended or not could have been resolved prior to the trial. It seems to be customary in undue-influence cases for the objectors to throw in the objection to the procedural execution of the will for good measure. When this is done the seriousness of the issue should be determined before trial. It is wrong for counsel to object to the execution of a will just to disqualify another attorney.

However, when a lawyer witnesses a will, either in hopes it will enhance his chance of probating the will or for convenience, he assumes the risk that if the execution is put in issue, his first duty is to his client to sustain the will and this requires him to free himself completely from the issue of its admissibility. A lawyer should not be both a witness for and an advocate of the cause of action. However, this rule is not one of the competency of the testimony but a question of professional ethics. Even in violation of the ethical standards, the evidence is competent. *Estate of Weinert* (1962), 18 Wis. 2d 33, 38, 117 N. W. 2d 685; *Estate of Stronks* (1961), 14 Wis. 2d 356, 363, 111 N. W. 2d 71.

*By the Court.*—Order affirmed.

---

stantial evidence will be offered in opposition to the testimony.

"(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

"(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

*Code of Professional Responsibility* (American Bar Association Special Committee on Evaluation of Ethical Standards, as amended and adopted by Wisconsin Supreme Court effective January 1, 1970), 43 Wis. 2d xlv, xlvi.