COURT OF APPEALS
DECISION
DATED AND FILED

December 19, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* Wis. Stat. § 808.10 and Rule 809.62.

Appeal No.    **2018AP924**

STATE OF WISCONSIN

Cir. Ct. No.  2016PR120

IN COURT OF APPEALS
DISTRICT IV

IN RE THE ESTATE OF CAROL A. HORSTMAN:

WESLEY HORSTMAN AND MARINDA HORSTMAN,

    APPELLANTS,

  V.

AUDRA B. DAWSON,

    RESPONDENT.

        APPEAL from a judgment of the circuit court for Grant County: ROBERT P. VAN DE HEY, Judge. *Affirmed*.

        Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in Wis. Stat. Rule 809.23(3).**

¶1    PER CURIAM.   On November 3, 2016, Carol Horstman executed a will leaving all of her property to her son, Wesley Horstman, and his wife, Marinda Horstman.[1]   After Carol died, her daughter, Audra Dawson, challenged the will on the ground that Wesley and Marinda had exercised undue influence over Carol when she executed the will.  Following a court trial, the circuit court concluded that Wesley and Marinda procured the will by undue influence.  Wesley and Marinda appeal, arguing that:  (1) the court's findings as to certain of the elements that must be proven to establish undue influence are clearly erroneous;[2] and (2) the court erroneously relied on extrinsic evidence (that is, outside the trial testimony and trial exhibits) in determining that the will was the product of undue influence.  We conclude that Wesley and Marinda fail to show either that the court's findings as to the undue influence elements are clearly erroneous or that the court relied on extrinsic evidence.  Accordingly, we affirm.

## BACKGROUND

¶2    The following facts are not in dispute.  Carol was admitted to the hospital for treatment of malignant melanoma on October 21, 2016, and remained in the hospital until she died on November 8, 2016.  She executed her first and only will while in the hospital on November 3, 2016.  Carol was survived by her two children, Wesley and Audra, and her brother, Ted Dawson.  The will left

---

[1] Because multiple parties in the case share last names, after initial introduction we will refer to the parties and their family members by their first names.

[2] Wesley and Marinda specifically argue that the circuit court's findings as to the undue influence elements "are contrary to the great weight and clear preponderance of the evidence."  We have explained that the "clearly erroneous" standard is substantively the same as the "great weight and clear preponderance of the evidence" test stated in older cases.  *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983).

Carol's entire estate, including the 224-acre family farm, to Wesley and his wife, Marinda.

¶3    Audra filed a petition for the administration of Carol's estate and, after Wesley and Marinda filed the will, Audra objected to admission of the will for probate on the ground of undue influence. Following a court trial, the circuit court issued a detailed decision and order explaining its determination that the will "was the product of undue influence applied by Wesley and Marinda Horstman" and, as a result, the will was not accepted for probate by the circuit court.

¶4    Wesley and Marinda appeal.

¶5    We present additional facts as pertinent to Wesley and Marinda's arguments below.

## DISCUSSION

¶6    As stated, Wesley and Marinda argue that: (1) the circuit court erred in finding that certain elements of undue influence are met; and (2) the court erroneously relied on extrinsic evidence in finding that the will was the product of undue influence. We address each argument in turn.

### I. Undue Influence

¶7    We first state the standard of review. We next state the applicable legal principles as to undue influence and identify the three undue influence elements that Wesley and Marinda contend were affected by the circuit court's erroneous fact-finding. Finally, we summarize the court's findings for each element in turn and explain why we reject Wesley and Marinda's challenges to those findings.

## A. Standard of Review

¶8      We accept the circuit court's findings of fact regarding undue influence unless they are clearly erroneous.  *See* WIS. STAT. § 805.17(2) (2017-18) (addressing fact-finding in a trial to the court); *Odegard v. Birkeland*, 85 Wis. 2d 126, 134, 270 N.W.2d 386 (1978) (addressing fact-finding regarding undue influence); *Miller v. Vorel*, 105 Wis. 2d 112, 116, 312 N.W.2d 850 (Ct. App. 1981) (same).[3]  When the circuit court "acts as the finder of fact, and where there is conflicting testimony, the [circuit court] is the ultimate arbiter of the credibility of the witnesses.  When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App.1983) (quoted source omitted); s*ee also Miller*, 105 Wis. 2d at 116.

¶9      We search the record for facts to support the findings the circuit court did make, not for evidence to support the findings the court did not make. *Odegard*, 85 Wis. 2d at 134.  It is for the circuit court, not this court, to resolve conflicts in the testimony.  *See Fuller v. Riedel*, 159 Wis. 2d 323, 332, 464 N.W.2d 97 (Ct. App. 1990).

## B. Applicable Legal Principles

¶10   Undue influence must be proved by clear, satisfactory, and convincing evidence.  *Hamm v. Jenkins*, 67 Wis. 2d 279, 282, 227 N.W.2d 34 (1975).  "There are two avenues by which an objector to a will may challenge its

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

4

admission on the theory of undue influence." ***Hoeft v. Friedli***, 164 Wis. 2d 178, 184, 473 N.W.2d 604 (Ct. App. 1991).

¶11 One avenue is known as the "four-element test" and requires proof of: (1) susceptibility to undue influence; (2) opportunity to influence; (3) disposition to influence; and (4) coveted result. ***Id.*** at 185; ***Miller***, 105 Wis. 2d at 116. "When the objector [to the will] has established three of the four elements by clear and convincing evidence, only slight evidence of the fourth is required." ***Hoeft***, 164 Wis. 2d at 185.

¶12 The other avenue is known as the "two-element test" and requires proof of: (1) "a confidential or a fiduciary relationship between the testator and the favored beneficiary"; and (2) the existence of "suspicious circumstances surrounding the making of the will." ***Id.*** at 184.

¶13 "Only one test need be met for the objector [to the will] to prevail." ***Id.*** at 185. The circuit court in this case determined that Audra proved undue influence under both tests.

### C. Analysis

#### 1. Four-element Test

¶14 Wesley and Marinda concede that the circuit court did not err in finding proof of two of the four elements in the four-element test: opportunity to influence and coveted result. They challenge only the court's findings as to the remaining two elements: disposition to unduly influence and susceptibility to undue influence. We now address each element in turn.

*a. Disposition to Unduly Influence*

¶15    Disposition to unduly influence means something more than a mere desire to obtain a share of an estate; it implies a willingness to do something wrong or unfair, with grasping and overreaching characteristics.  ***Kehrberg v. Pribnow***, 46 Wis. 2d 205, 214, 174 N.W.2d 256 (1970).  Disposition to unduly influence has also been described as a willingness to bring about a "result favorable to [oneself] and unjust to another."  ***Schaefer v. Ziebell***, 207 Wis. 404, 415, 241 N.W. 382 (1932).

¶16    Here, the circuit court found that Wesley and Marinda's "disposition to influence was hardly concealed."  The court found that Wesley and Marinda "were very willing to trash Audra in the most savage way and at every opportunity."  The court found that Wesley and Marinda wanted to keep the farm because Wesley had invested effort in it and they hoped that their sons would one day farm it, and that Wesley and Marinda "despised" Audra and believed that Audra deserved nothing because she had contributed nothing to the farm.  The court contrasted these facts with the testimony of Carol's brother and sister-in-law, Ted and Shirlaine Dawson, which the court credited to a great degree because of their lack of interest in Carol's estate.  Ted and Shirlaine testified that Carol said that she wanted her children to share her estate equally, and that she knew they would without Carol having to make a will.  The court also found significant Carol's message to Audra's phone shortly before Carol's hospitalization which, in the court's words, "ended with her tenderly saying 'I love you.'"

¶17    The circuit court also found that, in order to create Carol's will, which named Wesley and Marinda as sole beneficiaries, Wesley and Marinda procured the services of a law firm and participated in the discussion surrounding

the drafting of the will. In addition, the court found not credible and inconsistent much of the testimony of Wesley and Marinda and their family. For example, the court found not credible and inconsistent Wesley's and Marinda's own testimony that they were not aware of the terms of the will until they filed it in court, as well as the testimony of Wesley, Marinda, their children, and Marinda's sister, that Carol had long wanted to disinherit Audra. The court credited evidence that Wesley and Marinda arranged for a legal assistant to help Carol prepare a will at the hospital and participated in the discussion surrounding the drafting of the will, which named Wesley and Marinda as sole beneficiaries.

¶18    We conclude that the record sufficiently supports the circuit court's implicit finding that Wesley and Marinda were *willing* to bring about a result favorable to them and unjust to Audra. In the years leading up to Carol's death, Wesley showed his desire that he, not Audra, get the farm, and his willingness to act on that desire, when, as examples, he instructed Carol's attorney to put the farm in his name after Carol's stroke, and he threatened to kill Audra's daughter, Katy Tomten, when he heard that Katy had offered to buy the farm from Carol. When Carol appeared to be on the verge of dying without a will, Wesley continued expressing and acting on his interest in securing the farm for himself, even though his mother had always indicated that he would share it with Audra. Also supporting the circuit court's findings are numerous instances of Wesley and Marinda expressing animus towards Audra. In light of the evidence the court credited, its finding that Wesley and Marinda had a disposition to unduly influence Carol to disinherit Audra is not clearly erroneous.

¶19    Wesley and Marinda's arguments to the contrary lack merit. Wesley and Marinda argue that Audra did not present clear and convincing evidence of their disposition to unduly influence. But the standard of review on appeal is

whether the circuit court's findings as to their disposition to unduly influence are clearly erroneous. *Hamm*, 67 Wis. 2d at 282; *see also Miller*, 105 Wis. 2d at 116. Wesley and Marinda do not show that the circuit court erred. Their arguments—that sibling rivalry does not alone indicate an inclination to take advantage of a parent, and that Wesley's desire for the farm based on his attachment to and work on it does not make that "natural" desire wrong—disregard the totality of the evidence before the court as well as the court's role as the ultimate arbiter of the weight and credibility of that evidence. Wesley and Marinda would have this court view, credit, and weigh the evidence differently from the circuit court. But, that is not our role. On appeal we search the record for facts to support the findings the circuit court did make, not for evidence to support the findings the court did not make. *Odegard*, 85 Wis. 2d at 134.

¶20 Wesley and Marinda direct this court's attention to evidence that they "took care of Carol during her greatest hour of need," and to case law in which no disposition to unduly influence was found where a beneficiary had provided aid and comfort to a failing testator, or, more generally, when a parent disinherited a child. However, those cases are easily distinguished on their facts and do not assist Wesley and Marinda.[4]

---

[4] In *Brehmer v. Dehmien*, the testator came into a law office unassisted and articulated to an attorney that he desired to make no provision for his son in his will because of his son's wealth, lack of children, and "happenings of the past"; the court found "nothing" in the record supporting a disposition to influence. *Brehmer v. Dehmien*, 41 Wis. 2d 349, 354-6, 164 N.W.2d 318 (1969). In *Lee v. Kamesar*, the court found no disposition to influence when one of the testator's children—who had not received substantial gifts from her parents while they were alive—was present during the creation of a will and was given a portion of the estate when the testator's other children did not receive a portion of the estate, and where the attorney preparing the will believed the testator to be competent and not under any undue influence. *Lee v. Kamesar*, 81 Wis. 2d 151, 259 N.W.2d 733 (1977). In *Sensenbrenner v. Sensenbrenner*, the court noted that "[i]nfluence gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced" and noted that the beneficiary was the true "natural object[]

(continued)

¶21 Finally, Wesley and Marinda argue that Audra fails in her respondent's brief to cite to evidence which demonstrates that *Marinda* had a disposition to unduly influence Carol, and that this failure requires this court to reverse the judgment against Marinda. However, Wesley and Marinda unsurprisingly fail to cite legal authority in support of their argument that such a failure requires reversal. Undue influence is "undue influence" no matter who exerts it. Had the circuit court found that the evidence established that only Wesley satisfied each of the four elements in the undue influence test, so as to support the determination that Wesley procured Carol's will by undue influence, those findings alone would have supported the court's invalidation of the will. Regardless, we do not agree that Audra failed to cite to evidence demonstrating Marinda's disposition to unduly influence. Moreover, even if Audra had not cited instances supporting Marinda's disposition to unduly influence, the record contains such evidence.

¶22 In sum, Wesley and Marinda fail to show that the circuit court's findings as to disposition to unduly influence are clearly erroneous.

---

of [the testator's] bounty." *Sensenbrenner v. Sensenbrenner*, 89 Wis. 2d 677, 699, 701, 278 N.W.2d 887 (1979). The court in *Kehrberg v. Pribnow* ultimately found no disposition to influence when the record did not indicate that the beneficiary was responsible for initiating the execution of a will, or that the beneficiary had discussed the provisions of the will with the testator. *Kehrberg v. Pribnow*, 46 Wis. 2d 205, 174 N.W.2d 256 (1970).

In addition, Wesley and Marinda cite two unpublished per curiam opinions of this court in violation of WIS. STAT. RULE 809.23(3). Future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

### b. Susceptibility to Influence

¶23    The circuit court also found that Carol was susceptible to undue influence.  In finding whether susceptibility to undue influence exists, the court examines such factors as the testator's "age, personality, physical and mental health and ability to handle business affairs." *Lee v. Kamesar*, 81 Wis. 2d 151, 159, 259 N.W.2d 733 (1977).  Susceptibility to undue influence is established "[i]f consideration of these factors demonstrates that the testator was unusually receptive to the suggestions of others." *Johnson v. Merta*, 95 Wis. 2d 141, 156-57, 289 N.W.2d 813 (1980).

¶24    The circuit court found that Carol, seventy years old when she died, had been "totally dependent on Wesley and Marinda for every aspect of her care in the weeks leading up to her hospitalization," and that that dependence caused her to be susceptible to their influence.  The court also found that Carol was experiencing numerous physical and mental problems requiring numerous medications when the will was drafted and that Carol was "literally on her death-bed" when the will was drafted, further causing her to be susceptible to Wesley and Marinda's influence.  The court found it most significant that Wesley and Marinda had "cut Carol off from any unsupervised contact with Audra in the time period immediately before [Carol's] hospitalization, and cut her off totally while she was at the hospital," and that that isolation also caused Carol to be susceptible to Wesley and Marinda's suggestions, aggravated by their "savage" and constant "trash[ing]" of Audra.

¶25    We conclude that these findings are sufficiently supported in the record.  Carol's physical and mental health were, as testified by her doctor, dire. Wesley and Marinda cared for Carol as she ailed in her home for two weeks, until

Carol was admitted to the hospital. Wesley and Marinda did not tell Audra, Audra's daughter Katy (who was very close to Carol), or Ted (who was also close to Carol) that Carol was dying and told them not to visit Carol. Wesley and Marinda told hospital security not to let Audra in Carol's room. Wesley and Marinda testified that they did so at Carol's request. Audra and Katy ultimately found out from Ted that Carol was dying in the hospital and snuck into Carol's room and said good-bye to Carol just hours before she died on November 8. The court's finding that Carol was susceptible to the undue influence of Wesley and Marinda when she prepared her will is not clearly erroneous.

¶26    Wesley and Marinda point to evidence that could have supported findings that: Carol was generally an independent woman who could make up her own mind; Carol wanted to go home and did not know that she would die five days later; Carol was competent to consider her treatment options on the day she created her will; Carol had told Wesley and Marinda not to let anyone visit her; and Carol was not "isolated" because a call with Katy somehow slipped through. While this evidence might have supported findings against susceptibility to undue influence, the circuit court's findings to the contrary are not clearly erroneous given the evidence cited above and the court's weighing and crediting of that evidence.

*c. Existence of Suspicious Circumstances*

¶27    While we need not analyze this element from the two-element test for undue influence, having rejected Wesley and Marinda's challenge to the circuit court's determination of undue influence under the four-element test, we follow the circuit court's and the parties' leads, and explain why Wesley and Marinda's challenge to the court's findings as to the existence of suspicious circumstances

also fails.[5]  The existence of the suspicious circumstances element is proven if the objector to the will offers evidence regarding "the activity of the beneficiary in procuring the drafting and execution of the will, or a sudden and unexplained change in the attitude of the testator, or some other persuasive circumstance." *Lee*, 81 Wis. 2d at 166 (quoted source omitted).

¶28    The circuit court found the existence of suspicious circumstances surrounding the execution of the will to be "perhaps the most troubling aspect of this case, but also the most telling … because the train-wreck that was the execution of this Will exposes the unreliability of almost everything Wesley and Marinda testified to, and what they presented as corroborating evidence."  The court found that, had Carol actually intended to disinherit Audra, as was purportedly widely known, she would have done so years before, when Wesley threatened to sue Carol in order to recover the contributions he made to the farm.[6] The court found it suspicious that Wesley and Marinda contacted the attorney only when Carol was dying in the hospital; that Wesley and Marinda isolated Carol from her loved ones; that Wesley and Marinda "felt the need to minimize their role in the drafting of the Will"; and that Wesley and Marinda testified that they did not know the contents of the will until after Carol died, even though they were in the room during the time the will was discussed and drafted, and Marinda took a

---

[5] Wesley and Marinda concede that the circuit court did not err in finding proof of the first element of the two-element test—that there was a confidential or fiduciary relationship between Carol and Wesley and Marinda.

[6] Wesley and Marinda argue that this specific finding is impermissibly supported by extrinsic evidence.  Even if the finding is supported by extrinsic evidence, it is also supported by the trial record, as related below:  Wesley testified that he told his mother he might seek a lien against the farm, and Katy testified that Wesley had written to Carol's attorney in 2011 in an attempt to have the title to the farm placed in his name because Carol was "incompetent" after suffering a stroke.

copy of the will after it was executed. The court also found Wesley and Marinda's "feigned ignorance" about the will inconsistent with their testimony, their son's testimony, and Marinda's sister's testimony, all of which, if credited, would indicate that "Carol's desire to disinherit Audra was long-lived and the worst-kept secret on the planet." Finally, the court found it suspicious that no legal advice was provided to Carol as to options other than disinheriting Audra, after Carol expressed concerns to the legal assistant about protecting the farm from the state and from being sold by Audra, all while Carol was in the presence of and being assisted by "the two people [with the most] reasons to convince her to sign it."

¶29 We conclude that the circuit court's findings as to the existence of suspicious circumstances are sufficiently supported by the record. Carol had suffered a host of medical issues in the years leading up to her death, during which time she told multiple people that she did not want a will, believing that her children would share her property evenly, "fight over it," and "sort it out" if Wesley or Audra wanted specific items. Yet, days before her death, in the hospital being treated for what would be her terminal disease, Carol suddenly changed her mind and left all of her property to her son and his wife. Carol left nothing to her daughter Audra, whom she had called days earlier with a medical update and a declaration of love.

¶30 The circuit court's finding of the existence of suspicious circumstances is not clearly erroneous. In challenging that finding, Wesley and Marinda point to various pieces of evidence, such as their helping Carol before she was hospitalized, Carol's having the assistance of a legal assistant who called the attorney with questions, and Carol's documented alertness and lucidity. However, that these particular pieces of evidence may tilt in Wesley and Marinda's favor is not sufficient.

13

¶31    In sum, Wesley and Marinda fail to show that the circuit court's findings as to the existence of suspicious circumstances are clearly erroneous.

## II. Extrinsic Evidence

¶32    Wesley and Marinda argue that their due process rights were violated because the circuit court, in making its undue influence findings, considered and relied on extrinsic evidence not presented at the trial.   More specifically, Wesley and Marinda argue that the court erroneously relied on four items of extrinsic evidence.  We point out the deficiency of their argument as to each item in turn.

¶33    *Holt's deposition testimony*.  The circuit court's Decision and Order states, "Despite [Legal Assistant] Holt's attempt to attribute most of the significant [will-related] statements to Carol, [Holt] remembered little and repeatedly let it slip that it was a group discussion."  The court then includes in a footnote a portion of Holt's deposition testimony.  However, Wesley and Marinda do not explain how the quoted portion of Holt's deposition testimony differs in any material way from her testimony at trial about what took place and who was present during her time with Carol at the hospital.

¶34    *Wesley's pretrial affidavit*.  The circuit court's Decision and Order states that the trial testimony of Wesley, Marinda, and Marinda's sister was inconsistent with Wesley's pretrial affidavit, in which Wesley indicated that he had sought legal counsel in 2015, and that this counsel told him that "it would be better to sue Carol, because injunctions, liens, and wills might not work if we wanted to get the money back we had invested in the farm."  Again, however, Wesley and Marinda do not explain how the cited portion of Wesley's affidavit

differs in any material way from Wesley's trial testimony that he told Carol he would sue to get the money he had put into the farm.

¶35 *An attorney's pretrial affidavit.* The circuit court's Decision and Order includes a footnote that references a pretrial affidavit from an attorney who had counseled Wesley in 2015, but the court also notes that the information in the affidavit is "not being considered for the purpose of this decision."

¶36 *A pretrial motion and findings regarding Carol's remains.* The circuit court's Decision and Order includes a footnote stating, "Wesley's failure to provide Carol's ashes for a memorial service as ordered by the court led to a contempt finding and exemplifies how far he is willing to go to cut Audra out of their mother's affairs." However, Wesley and Marinda do not explain how this is materially different from Audra's testimony that Wesley told her that he would under no circumstances allow her to attend Carol's funeral.

¶37 In sum, Wesley and Marinda fail to show that the circuit court relied on extrinsic evidence.[7]

---

[7] Even if Wesley and Marinda had shown that the circuit court relied on any of these items, we would conclude that any such error was harmless.

Under the harmless error rule, we will not reverse a judgment unless "the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment." WIS. STAT. § 805.18(2) "In order for an error to affect the substantial rights of a party within the meaning of WIS. STAT. § 805.18(2), 'there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue.' 'A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome.""" *Weborg v. Jenny*, 2012 WI 67, ¶68, 341 Wis. 2d 668, 816 N.W.2d 191 (quoted sources omitted). "If the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless." *In re Termination of Parental Rights to Jayton S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768. Application of the harmless error rule presents a question of law that this court reviews de novo. *Weborg*, 341 Wis. 2d 668, ¶43.

(continued)

**CONCLUSION**

¶38   Wesley and Marinda fail to show either that the circuit court's findings as to the elements establishing undue influence are clearly erroneous or that the court erred in relying on extrinsic evidence.  For the reasons stated, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.   *See* WIS. STAT. RULE 809.23(1)(b)5.

---

Here, any such error would not be sufficient to undermine our confidence in the outcome of the proceeding.  As explained at length above, the circuit court's findings as to the elements establishing that Carol's will was procured by Wesley and Marinda's undue influence are supported by facts properly in the trial record and are not clearly erroneous.