ESTATE OF HORKAN: HORKAN and another, Executors, Appellants, vs. CROAL, Respondent.

*April 5—June 20, 1927.*

*Executors: Claims against property impressed with trust: Creation of trust: Securities executed in name of beneficiary: Retention of interest by donor: Interest received by executors.*

1. The right of a daughter to have certain property coming into the hands of the executors of her father's estate impressed with a trust in her favor does not constitute a claim against the estate proper, within the meaning of sec. 313.08, Stats., requiring the filing of claims within a fixed time.  p. 290.

2. A father, by causing a note and mortgage to be executed in his daughter's name and by writing a letter relative to the reinvestment of the proceeds of a loan in the name of the daughter, is *held* to have created an effective, completed, and irrevocable trust relationship in favor of the daughter; and such mutual relationship of trustee and *cestui que trust,* established by the action of the father, could not thereafter be changed except by mutual consent.  pp. 291, 292.

3. A trust relationship in favor of a daughter as to funds invested for her by her father may be created very informally, and no precise method can be prescribed.  p. 291.

4. Where the father showed an intention to create a trust in favor of the daughter by causing the note and mortgage to be made out in her name, it was immaterial that there was no delivery of such respective instruments to the daughter as would be necessary in order to make a completed gift, since the father might properly reserve to himself the right to receive the interest during his life, and could properly hold the instruments for that purpose.  pp. 291, 292.

5. Where no payments were made by the father to the daughter of interest received by him on the note and mortgage, it will not be held, after the death of the father, that he had created a trust in favor of his daughter for interest accruing during

his lifetime on the principal sum; but any interest actually received by the executors on account of the note and mortgage properly belongs to the daughter.  pp. 294, 295.

APPEAL from an order of the county court of Sauk county: JAMES H. HILL, Judge. *Modified and affirmed.*

This case involves a claim asserted against the appellants as executors.

The same estate is involved as in the case of the same appellants against Helen Winnie (*ante,* p. 26, 213 N. W. 671), and general facts therein recited need not be repeated.

The claimant here, *Catherine Croal,* a daughter of the deceased, lived during minority and for about eleven years after becoming twenty-one years old, with the family of deceased, assisting in taking care of the family and in household duties and apparently receiving no compensation for such services.

May 4, 1918, the father loaned $5,000 of his money to the firm of Powers Brothers.  By his direction the note and the mortgage for the same were made payable to the claimant, then *Catherine Horkan.*  Such note and mortgage remained in the possession of George Horkan, who caused the mortgage to be recorded.  Before it became due, the $5,000 with interest was paid and a satisfaction of the mortgage executed by *Catherine.*  The day following such payment and on November 2, 1920, the deceased wrote to a banker, one Winsor, who was also interested in the Mauston Electric Service Company, concerning the investment in stock of that company and saying, among other things:

"Never The less I have 5000 dollars in Trust From My Daughter That I can Lone for her Intrest That I Think I will Take the Risk and let your company have For 2 years with interest a 7 perct semianuly signed by all The stock holders.  Now if you want It at Thoes Terms send the Note Pable To *Catherine A. Horkan* For 5000 Dollars Due in 2 years Intrest 7 pcent semi anualy To The Citzens Bank and I will forward to your Bank Moston the 5000 Dollars.  I will expect an ansure as soon as you can as I have severl par-

Estate of Horkan, 193 Wis. 286.

ties that wonts It   I will Rely on your Judgment as To The security."

In evident response to such letter a note was made out by the company dated November 5, 1920, for $5,000 payable to the order of *Catherine A. Horkan* for the period and with interest as so mentioned.

This note never came into the possession of the claimant. Indorsed on its back were the words, *"Catherine A. Horkan to George Horkan,"* in the handwriting of the deceased. Interest payments were also indorsed.  Further correspondence was had between the deceased and said Winsor concerning the said note and interest and suggesting a willingness on the part of deceased to loan additional sums at seven and one-half per cent.

Shortly before the due date of this note and on October 19, 1922, in exchange for the said $5,000 note, another note of $2,000 of September, 1921, and $500 cash, the said company executed its two several notes, each of $3,750, each payable to said deceased and indorsed by Mr. Winsor and three others connected with said company, one note due in five years, now in the hands of the executors, one due in two years, which was renewed, and the renewal note paid to the executors in October, 1925.

The claimant, *Catherine,* married in August, 1921, contrary to the wishes of the deceased, and by reason thereof the two were estranged until after November, 1922.  November 17, 1922, the deceased executed his will reciting in the seventh clause, which contained gifts to the five daughters, as follows:

"Unto my fifth daughter, *Catherine Ann Horkan* [omitting her then name by marriage], I have heretofore conveyed a half interest in said Fuller property; in addition I now give and bequeath unto her the sum of $4,500."

She was also within the residuary clause of said will sharing equally with the other daughters.

The father was placed under the guardianship of two of

the sons in the spring of 1923 and died in March, 1925, then eighty-five years of age. The same two sons are the executors. The estate is over $100,000.

In May following the father's death a family conference was had in which many matters pertaining to the property, gifts to the various children, and contests over the will and claims were discussed, the claimant saying, among other things, that she had not received as proportionately much during the lifetime of the deceased as some of the others. She did not then speak of any claim she had or might have to the $5,000. Large claims were filed against the estate; some, including one by one of the executors, an appellant here, for interest collected by the father on various gifts. The claimant filed one for $4,077 for services, allowed at $3,000, and for about $1,000 for rents and profits from the Fuller property, allowed at $166.66. Some correspondence was had in August and September between attorneys for the claimant and the executors as to whether or not there had been found among the papers of the deceased anything that evidenced property having been held in trust by the deceased for said claimant. On October 6th judgment on claims was entered, and on October 27th claimant asked to be permitted to assert her claim now considered.

Objections were interposed on the grounds that the claim was barred because of failure to file and present the same within the statutory and fixed time and because the claim is without merit.

The court after hearing found that there had been a trust created in favor of the claimant for the sum of $5,000; that the $3,750 note of the Mauston Electric Service Company held by the executors was impressed with such trust, and that a sum of $1,250, making up the $5,000, and being a part of the payment of the other of said two notes, was also so impressed with a trust, and allowed interest at seven per cent. from November 5, 1920.

From the judgment entered thereon the executors have

appealed.   The claimant moved to review so much of said judgment as failed to allow a recovery of interest from the date of the Powers note, November 5, 1918, up to November 5, 1920.

For the appellants there was a brief by *R. P. Perry* of Reedsburg and *Olin & Butler* of Madison, and oral argument by *Emmert L. Wingert* and *R. M. Rieser,* both of Madison.

For the respondent there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker* and *Daniel H. Grady.*

ESCHWEILER, J.   The executors, appellants here, contend that the claim of *Mrs. Croal,* respondent, ought not to be entertained at all because not presented or filed within the time limited by statute and by the original order of the court for the filing and hearing of claims.

Having reached the conclusion, as hereinafter stated, that *Mrs. Croal* is entitled to have declared certain property coming into the hands of the executors impressed with a trust in her favor, we are of the opinion that such a right is not a claim against the estate proper as in the case of ordinary debts or demands covered by sec. 313.08, Stats. (sec. 3844). She is entitled to recover here because certain property in the possession of the deceased and coming into the possession of. the executors was really her property, not his or theirs. The executors took no stronger title than the deceased had to the particular property to which she asserts the better title. It is in reality a contest over title to certain specific personal property, the executors claiming it belongs to them for the estate, she claiming it as hers, rather than the ordinary case of a claim against the assets of an estate where title to such assets is concededly in the estate and the claimant seeks merely to be paid therefrom and but proportionately only if such assets are insufficient to pay all claims.   Such a dis-

tinction is recognized in *King v. Lawrence,* 14 Wis. 238; *Lannon v. Hackett,* 49 Wis. 261, 265, 5 N. W. 474.

We think the situation here is well within and controlled by *Biron v. Scott,* 80 Wis. 206, 211, 49 N. W. 747, as held by the court below; and within the rule as recognized elsewhere. *Brown v. Sebastopol,* 153 Cal. 704, 96 Pac. 363, 19 L. R. A. N. s. 178; *First Nat. Bank v. Hummel,* 14 Colo. 259, 23 Pac. 986, 8 L. R. A. 788.

On the main question involved we think that what was done by the deceased in causing to be executed a $5,000 note and mortgage in the name of his daughter in the original transaction with the Powers Brothers of May, 1918; the letter written by him in November, 1920, set out above, when the proceeds of such loan were invested by him in the $5,000 note of the Mauston Electric Service Company and expressly directed by him to be in the name of the daughter, was sufficient action on his part, evidenced in writing, to make an effective, completed, and irrevocable trust relationship in favor of the daughter as to the fund of $5,000.

The creating of such a trust may be done very informally and no precise method is or can be prescribed. *Pratt v. Ayer,* 3 Pin. 236, 255.

It is quite evident that at the time he directed the notes in 1918 and 1920 to be made out in her name and not his, that he was by his acts and in his writings showing an intention that she was to benefit to the extent of $5,000 in a fund originally his and which he lawfully and naturally might devote to such purpose. A fair presumption arises that he intended something valid rather than something void. *Jones v. Caird,* 153 Wis. 384, 388, 141 N. W. 228. He then visibly attached to the transaction nothing showing a then present intention to reserve a right to subsequently revoke. It seems a situation clearly within the case of *Cerney v. Pawlot,* 66 Wis. 262, 28 N. W. 183, where, by direction of

a father advancing the money, the note and mortgage were made in the daughter's name, and it was held that the transaction was irrevocable in her favor and no trust in his favor thereby resulted. Page 266. If in this case the father's then intention was that evidenced by his directions for the making out of the notes payable to her, in the notes themselves so made, and in his letter of November 2, 1920, *supra,* they all so clearly express the idea that the fund was hers and not his that the fund then became hers by his own acts and declarations and he became a trustee. He then attached her right to the fund, and his subsequent desire to change such disposition, however prompted, or his good-faith belief that he might so change, is entirely immaterial. That mutual relationship of trustee and *cestui que trust* once established, it could thereafter no more be changed, except by mutual consent, than could a completed gift be so destroyed. *Lamberson v. Lamberson,* 175 Wis. 398, 408, 184 N. W. 708; *Kellogg v. Adams,* 51 Wis. 138, 146, 8 N. W. 115.

That there was no such delivery of these respective instruments to the daughter as would be necessary in order to make a completed gift is here immaterial. He might properly reserve for himself the right to receive the interest on such fund during his lifetime and he could properly hold the said instruments for that purpose. He might also properly constitute himself trustee for her as to the principal sum and assume or presume to act either as such trustee or as her agent for the subsequent handling and control of said fund. *Govin v. De Miranda,* 140 N. Y. 474, 477, 35 N. E. 626. None of such situations are necessarily so in conflict with the idea of a trust as to destroy its effect as such as of the time of its creation; much less by anything subsequently he desires should be done or that is done by the creator of the trust can he destroy its original validity.

Appellants contend that the situation here is similar with the facts in *Ambrosius v. Ambrosius,* 239 Fed. 473, holding that an infant daughter could not assert a trust in a cer-

Estate of Horkan, 193 Wis. 286.

tain list of securities recited to be in an envelope in certain custody and the list closing with the statement that "All these foregoing securities belong to my daughter [naming her] and are held by me in trust for her during my lifetime." A copy of this list was left with the grandmother. The substantial difference between that and this case, however, lies in the fact that the securities there stood in donor's name or in the name of third persons indorsed in blank, and some of the securities were from time to time sold and scratched off the list. A second similar list was also treated the same way, he using some of the securities in borrowing money. The two lists were found after his death with a large number of the securities listed thereon, together with others not mentioned, but no showing was made that they were ever in the custody specified in the statement. The court held that there could be no present gift for want of delivery, and from the fact that he kept them in his own name, using them for his own purposes, as he did his other securities, that it could not be held that he intended to divest himself of ownership sufficiently to establish a trust.

Also *Eschen v. Steers,* 10 Fed. (2d) 739, where by letter a bank was directed to transfer the money on the father's account to that of the daughter, but in which he did not declare that he held the same in trust for her and where he retained complete dominion over the money to the extent of using it all if necessary for his own benefit, and it was held such could not be enforced as an executed trust, but was merely a tentative plan for testamentary disposition. On account of such features that case manifestly would not apply here. It discusses, however, the general rules and recognizes what is contended for by respondent here, namely, that by explicit declaration a person may constitute himself a trustee for another; that no particular language is necessary for the creating of such trust; it being sufficient if there be shown a clear intention to create a trust and the equitable title shall have passed; if once completely established, the

donor has no power to revoke the same unless such power is reserved at the time of its creation.

*Young v. Young*, 80 N. Y. 422, is also relied upon. There the antagonism is recognized between an actual executed gift and a declaration of trust in that, under the first, possession and title must pass; under the second, the possession and legal title must remain in the trustee; and that one necessarily excludes the other. But there the language relied upon was held to exclude either theory because of the recital that the bonds referred to were not to belong wholly or absolutely to the donees until after the death of the donor and there was no statement recognizing his holding the securities as trustee. None of these cases warrant a different disposition of this case upon the facts presented than was given it in the court below and now here.

In considering and so disposing of this matter we may disregard the oral statements testified to as having been made by the deceased to one of the makers of the first note and to another daughter concerning the intention of the deceased as to this fund, and therefore need not consider or dispose of the question as to whether or not such statements were properly received in evidence.

The trial court allowed the claimant interest on the $5,000 from November, 1920, the time of the execution of the note by the Mauston Electric Service Company, and the claimant seeks to review so much of the court's order in that regard as denied interest from the time of the Powers transaction in October, 1918.

On this matter we are satisfied that there was no sufficient showing that the deceased created a trust in favor of the claimant for the interest accruing during his lifetime on this principal sum of $5,000. This appears plainly from the fact that no payments were made by the father to the daughter of interest received by him, and further, that when the substitution of the note of the Mauston Electric Service Company for that of the Powers note was made in November,

1922, the interest that had been paid on the $5,000 up to that time was not added to or treated as a part of such trust fund or in any manner recognized as such by the deceased.

Under that view of the situation we feel that there has been no tracing into the funds coming into the hands of the executors as of the time of testator's death any sum representing interest as such to which the claimant could assert a claim under any trust relationship.

Any interest, however, actually received by the executors on account of the $5,000 after it reached their hands properly belongs to the claimant.  In other words, the trustees should not be chargeable with other than the funds of $5,000 represented now by the $3,750 note and the $1,250 cash paid to them on account of the other similar note, and with any interest thereon actually received by them as such.  To that extent the order below must be modified.

*By the Court.*—Order affirmed except as to the interest and as indicated in the opinion.

On September 28, 1927, a motion to amend the mandate was denied, without costs.