IN RE ESTATE OF TAYLOR, a/k/a Edna Taylor Giles NORDEN, Deceased: ONDERDONK, Appellant,† v. KEEPMAN, and others, Respondents.†

*No. 75–307. Submitted on briefs October 5, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 803.)

† Motions for rehearing denied, without costs, on March 3, 1978.

688

690

692

For the appellant the cause was submitted on the briefs of *James O. Onderdonk*, pro se, of Madison.

For the respondents the cause was submitted on the brief of *Richard J. Callaway* of Madison.

DAY, J. This is the second appeal by Mr. James O. Onderdonk in this action brought by the personal representatives of the Estate of Edna E. Taylor to determine the validity of a purported lease and bill of sale. Edna E. Taylor died on June 20, 1972, leaving two sons, a daughter, and an estate worth approximately $500,000. Her will as admitted to probate on September 7, 1972. The will bequeathed her real property to the Edna Taylor Foundation, her daughter the respondent Mrs. Patricia Keepman, and appellant James O. Onderdonk, who is described in her will as her friend. She bequeathed her personal property as follows:

"3. My personal property, jewels and books to be divided between the above named beneficiaries, with they, as executors using their best judgment for distribution to the six children of my daughter, my beloved grandchildren and to the two grandchildren of my friend, above mentioned."

Although her will also named Mr. Onderdonk and Mrs. Keepman as copersonal representatives, the probate court,

the Honorable P. Charles Jones, presiding, appointed the Bank of Madison as personal representative. The Bank served for a short time and resigned, and the court then appointed Mrs. Keepman, Onderdonk and Attorney Francis Lamb as successor representatives.

James O. Onderdonk met Edna Taylor in 1953. Shortly thereafter he and his four children became tenants in her home. Onderdonk and his children hav resided there as tenants since. Onderdonk is licensed to practice law in Maryland. From 1953 until her death he was her close friend, business manager and legal advisor. Since 1967 Onderdonk has been trustee of the Edna Taylor Foundation, a charitable trust created to promote research in land use and regional planning.

On September 15, 1972, while the Bank was still the personal representative for the estate, Onderdonk notified the Bank of a lease agreement purportedly executed by the decedent on May 15, 1972. By the terms of this document the decedent leased her farm, dairy cattle, farm machinery, tools, furnishings and her Buick automobile to Onderdonk for a rental of $1.00 a year, renewable automatically unless notice is given to the tenant sixty days prior to the expiration of the term. The lease also granted Onderdonk an exclusive option to renew for three years. The lease was signed by the parties and sealed.

On January 6, 1973, after Onderdonk, Mrs. Keepman and Attorney Lamb replaced the Bank as copersonal representatives, Onderdonk produced a letter and bill of sale, both purportedly signed by the decedent and dated May, 1972, in which the decedent for the consideration of $1, sold him all her rights in her personal property (most of which is also covered by the lease). The bill of sale was signed by the decedent and sealed, but it was not witnessed. Upon notice of Onderdonk's claim adverse to that of the estate, the other two personal representatives petitioned for the removal of Onderdonk as personal

representative. This petition was granted; Onderdonk appealed and in an unpublished per curiam this court affirmed the removal. 65 Wis.2d 793, 223 N.W.2d 687 (1974).

The two remaining representatives then by order to show cause petitioned for a decree requiring Onderdonk to vacate the decedent's premises and account for the assets of the decedent in his possession. The representatives also sought a declaratory judgment as to the ownership of the personal property of the deceased and the existence of a landlord-tenant relationship. This case was assigned to the Honorable Archie E. Simonson after Onderdonk petitioned for a substitution of judge. Judge Simonson concluded that the bill of sale and lease were not valid and ordered Onderdonk to deliver the real and personal property to the personal representatives and to vacate the premises and render an accounting. Onderdonk also appealed this order, and in the same unpublished opinion cited above, this court reversed. This court held that Judge Simonson erroneously refused to admit the lease and bill of sale into evidence. The court remanded the case for further proceedings. On remand Judge Simonson conducted a further hearing and in an extensive memorandum opinion found that the lease and bill of sale were not "authentic" and alternatively, that the lease was procured by undue influence. Mr. Onderdonk now appeals this order. The respondents, Mrs. Keepman et al., have requested double costs be assessed against the appellant for submitting a brief with "irrelevant material unsubstantiated by the record," and an appendix "full of arguments and omissions."

### *Issues.*

1. Is the finding that the lease and bill of sale are not authentic against the great weight of the evidence?

2. Is the finding that the lease was procured by undue influence against the great weight of the evidence?

3. Do respondents' other challenges have merit?

4. Should double costs be assessed against the appellant?

## I. AUTHENTICITY OF THE LEASE AND BILL OF SALE.

The trial court concluded that both the bill of sale and the lease were inauthentic. He declared the May, 1972 letter, with the bill of sale attached, invalid on the ground that it referred to a "heart condition" of Dr. Jay Keepman, Mrs. Taylor's son-in-law, of which Dr. Keepman himself was not aware until after Mrs. Taylor had died. The lease does not contain similar internal evidence that it may have been drafted after Mrs. Taylor's death. Nonetheless, the trial court declared the lease invalid on the ground that "If one (of the two documents at issue) is inauthentic, the other being identical and obtained about the same time, also has to be inauthentic."

Findings of fact by the trial court will not be upset on appeal unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. *Greiten v. La Dow,* 70 Wis.2d 589, 235 N.W.2d 677 (1975) ; *Chicago, M., St. P. & P. RR. Co. v. Milwaukee,* 47 Wis.2d 88, 176 N.W.2d 580 (1970). The hundreds of pages of transcripts in this case have produced remarkably little evidence relevant to the validity of these two documents. What relevant evidence there is includes testimony of several members of the Madison community who were familiar with Mrs. Taylor's signature and who testified that in their opinion the signatures on both the lease and the bill of sale were genuine. The respondents did not produce any evidence controverting this testimony. Instead, they simply introduced the testimony of Dr. Jay Keepman, who stated that he did not learn that

he had a "heart condition" until November, 1972, at least five months after the date of the purported bill of sale. Dr. Keepman also admitted that twenty years ago he was treated for cardiac arrhythmia, but explained that neither he nor his mother-in-law, who once taught college English, could have called this relatively minor cardiac irregularity a "heart condition." In a trial to the court the trial judge is the ultimate arbiter of the credibility of the witnesses. *Posnanski v. West Allis,* 61 Wis.2d 461, 213 N.W.2d 51 (1973) ; *Security Nat. Bank v. Cohen,* 41 Wis.2d 710, 165 N.W.2d 140 (1969). Where the facts are disputed, the reviewing court will defer to the fact findings of the jury or the court. *Roeske v. Diefenbach,* 75 Wis.2d 253, 249 N.W.2d 555 (1977). As long as the findings of facts are made on conflicting evidence, these findings will be affirmed if a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached the same conclusion. *Precision Service Co. v. Schill,* 60 Wis.2d 346, 210 N.W.2d 706 (1973). The evidence that the signatures on the documents were genuine was uncontroverted. But the trial court was entitled to weigh that evidence regarding the authenticity of the entire document against the testimony of Dr. Keepman. Whether Mrs. Taylor knew of the prior incident of arrhythmia or regarded it as a "heart condition" was a factual determination for the trial court. Since the testimony of Dr. Keepman to the contrary was not incredible, we must affirm the trial court's conclusion that the body of the bill of sale was drafted after Mrs. Taylor's death. The test is not whether this court or any of the members thereof are convinced that the lease was composed after the death of Mrs. Taylor but whether this court can conclude that the trial judge, weighing the credibility of the witnesses and acting reasonably could be so convinced by evidence he had a right to believe and accept as true. *Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971). We affirm the trial court on this issue.

██ However, the same conclusion cannot be reached regarding the trial court's determination that the lease is also inauthentic. This court finds nothing in the language or the style of the lease itself which raises a question concerning its authenticity. Even if Onderdonk had tampered with the bill of sale, not every document executed by the decedent that he might propound is ipso facto invalidated. The undisputed evidence was that Onderdonk and Mrs. Taylor had an ongoing lease arrangement similar to the one contained in the May, 1972, lease for almost twenty years. The respondents presented no evidence that Mrs. Taylor underwent a change of attitude regarding Mr. Onderdonk. In fact all the evidence is to the contrary. She made Onderdonk trustee of her Foundation, named him as an executor of her will, and gave him a large share in her estate under the will. Thus the lease, executed roughly contemporaneous with the will that has been admitted to probate, is consistent with Mrs. Taylor's obvious intention that Onderdonk receive substantial benefits from the ultimate disposition of her estate. The trial court's conclusion that the lease is not genuine is contrary to the great weight of the credible evidence. We reverse the trial court on that issue.

## II. UNDUE INFLUENCE.

In the proceedings below, the respondents did not present the case on a theory of undue influence. However, the court below sua sponte invalidated the lease on this ground because "the evidence supports it" and in Judge Simonson's view, "Mr. Onderdonk really has nothing significant to add to the evidence on the issue of undue influence." Therefore, there is very little evidence in the record one way or the other on this question, and what little evidence there is suggests that the trial court's reasoning was erroneous.

Undue influence in the execution of an inter vivos conveyance is proved in the same way that undue influence is proved in the execution of a will. *Estate of Larsen,* 7 Wis.2d 263, 96 N.W.2d 489 (1959). In Wisconsin one of two methods of proving undue influence is to prove the four classical elements: susceptibility, opportunity to influence, disposition to influence and coveted result. *Estate of Hamm,* 67 Wis.2d 279, 227 N.W.2d 34 (1975) ; *Estate of Von Ruden,* 55 Wis.2d 365, 198 N.W.2d 583 (1972). The burden is on the objector to prove by clear, satisfactory and convincing evidence that the will was a result of undue influence. However, when three of the four elements have been established by the required quantum of proof, only slight evidence of the fourth element is required. *Estate of Brehmer,* 41 Wis.2d 349, 352, 164 N.W.2d 318 (1969) ; *Will of Freitag,* 9 Wis.2d 315, 318, 101 N.W.2d 108 (1960) ; *Estate of McGonigal,* 46 Wis.2d 205, 209, 174 N.W.2d 256 (1970).

(a) *Susceptibility.*

The trial court found Edna Taylor susceptible to undue influence by Onderdonk at the time the lease was executed. This conclusion was based solely on the fact that Onderdonk was her legal and business advisor and that she was ill when the lease was executed. On the other hand, her will was executed at roughly the same time as the lease, and although it bequeathed a large share of the estate to Onderdonk, it was admitted to probate by Judge Jones as a validly executed will. The evidence suggests that Mrs. Taylor was strong-willed and handled her own affairs since her first husband died in 1935. Although she was seriously ill in May, 1972, there is no such evidence that this illness, which is unidentified in the record, affected her mental capacity. *Compare; Estate of Larsen, supra; In Matter*

*of Estate of Becker,* 76 Wis.2d 336, 251 N.W.2d 431 (1977).

(b) *Opportunity to influence.*

The trial court's finding that Onderdonk had opportunity to exercise undue influence is not against the great weight of the evidence.

(c) *Disposition to influence unduly.*

The trial court found that disposition to influence unduly is shown by the fact that the lease "is heavily weighted to Mr. Onderdonk's benefit." However, disposition to influence unduly involves more than just a desire to obtain a share of the grantor's estate. It implies a willingness to do something wrong or unfair. *Estate of Hamm,* 67 Wis.2d 279, 227 N.W.2d 34 (1975) ; *In Matter of Estate of Becker, supra.* Mr. Onderdonk had been a tenant of Mrs. Taylor's for almost twenty years. Under these circumstances, there is no evidence in the record that the lease executed May, 1972, evidences an intent "dictated" by Onderdonk. There is no evidence of overreaching with respect to the lease at the time the lease was purportedly signed.

(d) *Coveted result.*

This element goes to the naturalness or expectedness of the conveyance. *Estate of Steffke,* 48 Wis.2d 45, 49, 179 N.W.2d 846 (1970) ; *Estate of Hamm, supra* at 291. Although the fact that the decedent has excluded a natural object of his bounty is a "red flag of warning," *Estate of Culver,* 22 Wis.2d 665, 673, 126 N.W.2d 536 (1964), that fact alone does not render the disposition unnatural. *Estate of Steffke, supra.* Thus, where the record shows that a testator was alienated from the natural objects of his affection, *see, e.g., Will of Faulks,* 246 Wis. 319, 17 N.W.2d 423 (1945), where he felt his children abandoned him in his hour of need, *see, e.g., Will of Cooper,* 28 Wis.2d 391, 137 N.W.2d 93 (1965),

or where he felt they already had adequate financial resources, *see, e.g., Estate of Brehmer, supra,* this court has declared a will natural even though one or more of the heirs received nothing under the will.

The trial court held that the conclusion that the lease is unnatural is "self-evident." Yet in view of the long history of a landlord/tenant relationship between Mrs. Taylor and Onderdonk, the alienation of Edna Taylor from her two sons, and the fact that the lease is only for a term of one year, with an option to renew only for the first three years (*i.e.,* up to May, 1975), the lease is not unnatural under the circumstances.

Undue influence can also be proved by the existence of (1) a confidential relationship between the grantor and the favored grantee, and (2) suspicious circumstances surrounding the actual execution of the conveyance. *Will of Faulks,* 246 Wis. 319, 17 N.W.2d 423 (1945) ; *Will of Cooper,* 28 Wis.2d 391, 137 N.W.2d 93 (1965) ; *Estate of Hamm, supra.* Once the objector proves the existence of both elements by the requisite quantum, a presumption of undue influence is raised, which must then be rebutted by the proponent. *Will of Faulks, supra.*

*Confidential Relationship.*

The trial court found as a fact that Onderdonk was Mrs. Taylor's business manager and legal advisor. This finding is supported with the great weight of the evidence and proves that a confidential relationship existed as a matter of law. *In re Estate of Malnar,* 73 Wis.2d 192, 243 N.W.2d 435 (1976) ; In Matter of *Estate of Becker, supra.*

*Suspicious Circumstances.*

The suspect circumstances requirement is satisfied by proof of fact "such as the activity of the beneficiary in procuring the drafting and execution of the will or a sudden and unexplained change in the attitude of the testator, or some other somewhat presuasive circumstance." *Will of Faulks, supra* at 360; *Estate of Hamm, supra* at 294. "The basic question to be determined from the evidence submitted is always whether 'the free agency of the testator has been destroyed.' " *Estate of Hamm, supra* at 294, 295, quoting *Will of Faulks, supra* at 359.

The trial court made no specific findings of why he felt suspicious circumstances exist. The respondents' brief does not list any. It merely intimates that it is suspicious that the lease and bill of sale did not "surface" until several months after the will was probated. However, except for the fact that the lease was drafted on Onderdonk's typewriter, neither the trial court nor the respondents have pointed to any suspicious circumstances surrounding the execution of the lease. Rather than evidencing a sudden and unexplained change in attitude, the lease is consistent with all of Mrs. Taylor's plans for the disposition of her property. The court's finding of undue influence is against the great weight and clear preponderance of the evidence.

III. *RESPONDENTS' CHALLENGES TO THE DOCUMENTS.*

In its brief the respondents make the following attacks on the validity of the documents not ruled upon by the trial court.

(a) *Documents as evidence of invalid gifts causa mortis.*

In order to be a gift *causa mortis* the transfer must in the first instance be a gift. Both the lease and the bill of sale recite a consideration of $1 and are sealed. Moreover, the existence of actual consideration, in terms of Onderdonk's function as legal and business advisor, is shown in the trial court's findings of fact. These two documents do not evidence gifts. Sec. 891.27, Stats. *Farley v. Salow,* 67 Wis.2d 393, 227 N.W.2d 76 (1975) ; *Estate of Hatten,* 233 Wis. 199, 288 N.W. 278 (1940).

(b) *Onderdonk's failure to submit a notice of claim in compliance with sec. 859.01, Stats.*

The respondents claim that the lease and bill of sale are claims against the estate that are barred for failure to comply with the notice of claim provisions of the probate statutes. However, an otherwise valid lease and sale of personalty executed by the decedent prior to death are not claims against the estate under sec. 859.01, Stats. *Estate of Horkan,* 193 Wis. 286, 214 N.W. 438 (1927).

(c) *Onderdonk's belated assertion of his interest estops him from asserting it now.*

One who stands by and remains silent without asserting his rights is estopped to assert them when another party has acted thereon. *Marling v. Nommensen,* 127 Wis. 363, 106 N.W. 844 (1906). Although the respondents have shown that Onderdonk did not immediately assert his rights to the personalty by paying personal property taxes, changing the car registration and asserting his lease at the time of a sale of a portion of the real property of the estate, the respondents have failed to show the other essential elements of estoppel, *i.e.,* reliance on Onderdonk's silence and damage to the respon-

dents as a result. *Bump v. Dahl,* 26 Wis.2d 607, 133 N.W.2d 295, 134 N.W.2d 665 (1965).

## IV. *SHOULD THE RESPONDENTS BE AWARDED DOUBLE COSTS?*

The respondents assert that because appellant's brief contains irrelevant material outside the record and because appellant's appendix is argumentative and omits parts of the record, the estate should be awarded double costs. The respondents' allegations are essentially true. Not only appellant's brief and appendix and supplemental appendix, but also the record in this case (over 2,000 pages) are replete with irrelevant correspondence which is for the most part charges by Onderdonk against the personal representatives, the attorneys and the various trial judges. However, the respondents' brief also contains much irrelevant and argumentative material.

Under these circumstances, double costs should not be awarded to the respondents. *Kelly v. Madison Nat. Life Ins. Co.,* 37 Wis.2d 152, 154 N.W.2d 334 (1967).

*By the Court.*—Judgment affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.