Reinhard G. MIELKE and Mona A. Mielke,
Plaintiffs-Respondents,

v.

John NORDENG, Personal Representative of the James O. Egbert Estate and the James O. Egbert Estate, Defendants-Appellants.

Court of Appeals

No. 82–754. *Submitted on briefs April 27, 1983.—
Decided June 7, 1983.*
(Also reported in 337 N.W.2d 462.)

For the defendants-appellants the cause was submitted on the briefs of *A. Henry Hempe* and *Hempe & Hunsader, S.C.* of Janesville.

For the plaintiffs-respondents the cause was submitted on the brief of *Robert J. Elliott* of Janesville.

Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

GARTZKE, P.J.  Reinhard and Mona Mielke brought this action against the personal representative of the James Egbert Estate for specific performance of the Mielkes' offer to decedent to purchase his home, which he accepted some six months before he died.  The representative has appealed from a judgment granting specific performance.  He argues that respondents should have filed a timely claim against decedent's estate, that the acceptance resulted from undue influence and that specific performance was inappropriate.  We resolve these issues against appellant and affirm.

The trial court found that April 1979 the decedent accepted respondents' offer to purchase his house for $10,000, respondents to have possession of the property upon decedent's death or vacating the premises.  The original price and date on the offer were crossed out and $8,000 and June 23, 1979, substituted.  Decedent died October 23, 1979.

Construing the offer to purchase together with a "payment ledger" initialled by decedent, the trial court concluded that June 23 the parties modified the original offer to purchase to reflect a purchase price of $8,000.  The

court concluded that the offer to purchase was sufficiently definite and ordered specific performance of the agreement.

### 1. *Failure to File Claim*

Respondents have not filed a claim against the estate. The time for filing claims has expired. Claims against a decedent's estate are barred unless filed with the court within the time allowed. Sec. 859.01 (1), Stats. The trial court denied defendant's motion to dismiss the complaint, predicated on sec. 859.01 (1).

An action to compel a personal representative specifically to perform the contract of a decedent to convey real estate is not a claim against an estate. The plaintiff in such an action seeks title to the real estate, not merely payment from whatever assets the estate may have. *Compare In re Estate of Taylor,* 81 Wis. 2d 687, 703, 260 N.W. 2d 803, 809 (1978) (action to declare valid lease and sale by decedent is not a claim against estate) ; *Estate of Horkan,* 193 Wis. 286, 290–91, 214 N.W. 438, 439–40 (1927) (action to impose property held by executor with a trust is a contest over title and not a claim against estate assets from which claimant seeks payment). Consequently respondents were not required to file a claim against the estate.

### 2. *Sufficiency of Complaint*

Appellant argues that unless the agreement between the parties is read with the subsequently drawn "payment ledger," it is too vague to be enforced, and that the complaint should have been dismissed for that reason.

When the trial court admitted the "payment ledger" in evidence, it concluded that, reading the offer and the ledger together, the agreement was unambiguous. Extrinsic evidence is admissible to determine the intent of the

parties to an ambiguous contract. *Patti v. Western Machine Co.*, 72 Wis. 2d 348, 351, 241 N.W.2d 158, 160 (1976). Appellant does not quarrel with the conclusion that reading the documents together, the agreement is definite. Appellant's real argument is that the trial court erred in admitting the payment ledger. We turn to that issue.

3. *Admissibility of Payment Record*

Appellant bases his claim that the trial court should have excluded the payment ledger from evidence on the so-called "dead man's statute," sec. 885.16, Stats.

During the trial, Mona Mielke testified that she typed the payment ledger, that she presented it to the decedent July 15, 1979 and paid him $100 cash, that he receipted for that sum by initialing the payment ledger after having had an opportunity to read it, and that she again presented the ledger to him August 15, and in September and October, 1979, on which occasions she made payments to him of $100 or $200 and he receipted for those payments. Respondents then moved admission of the ledger. Appellant objected to its admission for any purpose except to show that respondents had made payments to decedent. Appellant told the court that insofar as it purported to explain the offer to purchase, the ledger constituted "a violation of section 885.16, Stats., and allows the witness to over-rule self-serving testimony to the transactions in question."

Strict judicial rules exist for the invocation or use of the dead man's statute. *In Matter of Estate of Reist*, 91 Wis. 2d 209, 222, 281 N.W.2d 86, 92 (1979). Unless a proper objection is made, the statute should not be applied. *Id.* An objection to the admissibility of evidence on grounds that it pertains to a transaction with a deceased person is not a proper objection. 91 Wis. 2d at 223, 281 N.W.2d at 92. The objection must be to the competency of the witness to testify, not to the testimony or to the evidence. *Id.*

Nowhere in his objection did appellant refer to the competency of the sponsoring witness. Accordingly, the trial court did not err in overruling the objection.

4. *Undue Influence*

One method of showing undue influence is to establish "susceptibility, opportunity to influence, disposition to influence and coveted result." *Taylor,* 81 Wis. 2d at 699, 260 N.W.2d at 807. Undue influence must be established by "clear, satisfactory and convincing evidence." *Id.* We must accept the trial court's factual findings unless they are against the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 249, 274 N.W.2d 647, 650 (1979).

The trial court found that decedent had physically and mentally deteriorated to some degree but was not susceptible to undue influence. It found that respondents had an opportunity but no disposition to unduly influence him. It found that decedent contracted to sell his home for less than its value, but the court said it could not infer undue influence from that fact alone. It found no evidence that decedent was incompetent when he dealt with respondents.

Appellant charges that the trial court regarded the question of decedent's competency as controlling the undue influence issue. He states that whether decedent was incompetent was not an issue. Decedent's competency was an issue. Appellant alleged in his answer as an affirmative defense that decedent had been infirm and senile for at least two years before his death and lacked capacity to enter a contract. The trial court properly made findings regarding decedent's competency.

The trial court did not confuse competency with the undue influence issue. The court separately discussed those

issues in its memorandum decision. It made separate findings on decedent's competency and the undue influence issues.

Appellant contends that the great weight of the evidence requires findings that decedent was susceptible to undue influence and that respondents were disposed to influence him. Appellant asserts that the record fairly shrieks of susceptibility.

The record is almost devoid of evidence that decedent was susceptible to undue influence. Appellant testified that he did not know if decedent was susceptible to undue influence or whether respondents had unduly influenced him. A friend, who frequently saw decedent, said that nobody could tell decedent what to do. He described decedent as an obstinate man who would ask advice but follow his own wishes. Another witness described decedent as very intelligent but forgetful until the last month before his death. Medical records from the Veterans Administration dated June 24, 1979, described decedent as an unshaven, dirty, elderly man, oriented as to place, person and month but not as to the year or day, and who had mild disorientation. Another Veterans Administration record, dated June 26, 1979, reports that decedent preferred one veterans' home over another, that neighbors and friends might help him to decide to apply, and concludes, "Veteran's neighbor will take him to VAMC, Wood to apply for admission to the domiciliary—*if he will go.*" (Emphasis added.) The finding that decedent was not susceptible to undue influence was not against the great weight and clear preponderance of the evidence.

The question of respondents' disposition to influence is closer. Both respondents admitted that they wanted to acquire decedent's property for several years. On the other hand, respondents said it was decedent who set the purchase price and decedent who subsequently suggested

reduction of the price, because, according to Mrs. Mielke, he had told her he would not pay a "company" to clean his house but would reduce the price by $2,000 if the Mielkes were to clean it. She said that it took about one month of evening and weekend work in which her adult children participated to clean the filthy interior.

The trial court, of course, as the trier of fact, is the final arbiter of the credibility of witnesses, including respondents. *Cogswell,* 87 Wis. 2d at 250, 274 N.W.2d at 650. We cannot say that the trial court's finding that respondents lacked a disposition to unduly influence the decedent is contrary to the great weight and clear preponderance of the evidence.

Appellant next argues that the close friendship between decedent and respondents supports an obvious inference of a confidential relationship. The closeness of the friendship is undisputed. Appellant finds additional evidence of a confidential relationship in that respondents discussed decedent's health, hygiene and past land transactions with him.

A confidential relationship between the grantor and the favored grantee and proof of suspicious circumstances surrounding the actual execution of a conveyance give rise to a presumption of undue influence, which the proponent of the conveyance must rebut. *Taylor,* 81 Wis. 2d at 701, 260 N.W.2d at 808.

Other than to assert that the close friendship between decedent and respondents supports an obvious inference of a confidential relationship, appellant offers no additional argument or law sustaining his position. Certain relationships are ordinarily referred to as being confidential, such as the relations of attorney and client, physician and patient, and priest and parishioner. *Will of Faulks,* 246 Wis. 319, 358, 17 N.W.2d 423, 439 (1945). A close relationship is not, however, necessarily a confidential relationship. For example, the relationship of

parent and child or husband and wife does not ordinarily create a confidential relationship, according to *Faulks,* 246 Wis. at 358, 17 N.W.2d at 439. In *Estate of Milbrot,* 43 Wis. 2d 108, 168 N.W.2d 129 (1969), the testatrix left her estate to her "closest friend." 43 Wis. 2d at 112, 168 N.W.2d at 130. Findings that the will was not procured by undue influence exercised by the friend were sustained without reference to the possibility that such a friendship could create a confidential relationship.

Because no showing has been made that a close friendship, without more, can create a confidential relationship as a matter of law, we conclude that the absence of findings by the trial court with respect to a confidential relationship does not require a reversal.

### 6. *Specific Performance*

Appellant contends that the trial court abused its discretion by granting specific performance. He states that the low purchase price is a suspicious circumstance and the trial court should have granted the respondents a remedy other than specific performance, such as recission.

Respondents assert without contradiction that this argument is first raised on appeal. "It is the often-repeated rule in this State that issues not raised or considered in the trial court will not be considered for the first time on appeal." *Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980) (citations omitted). Because the rule is one of administration, we will sometimes consider questions of law which have been thoroughly briefed and where no disputed issues of fact exist. 93 Wis. 2d at 444, 287 N.W.2d at 146.

Here, however, the point first raised on appeal goes to the discretion of the trial court. We would be loathe to conclude that the trial court had abused its discretion

when it had not been called upon to act in a particular way. We do not look "with favor upon claims of prejudicial error based upon the trial court's failure to act when no action was requested by counsel." *Whitty v. State*, 34 Wis. 2d 278, 290, 149 N.W.2d 557, 562 (1967). We decline to review the claim that the trial court abused its discretion.

 *By the Court.*—Judgment affirmed.