PER CURIAM.
¶1 Eighty-year-old S.S.Z. changed her power-of-attorney (POA) designation from her daughter, J.M., to her son, T.Z. Long-standing sibling discord fed allegations of financial mismanagement and undue influence. The Ozaukee County Department of Human Services (the County) petitioned for guardianship over S.S.Z.'s estate and person and for her protective placement. T.Z., as POA, objected. After protracted proceedings, the circuit court dismissed the petitions and ordered the County to pay $97,746.25 in attorneys' fees to S.S.Z.'s and T.Z.'s attorneys.[1] We affirm the order in that regard.
¶2 T.Z. cross-appeals the order, contending the court erred in denying him the reasonable costs and fees he incurred in litigating the fee motion. We agree and reverse that part of the order. We also agree with T.Z. that he should be granted costs and attorneys' fees for successfully defending the appeal. On remand, we direct the court to determine the reasonable costs and fees he incurred in litigating the fee motion and the appeal.[2]
¶3 After being diagnosed with dementia in 2012, S.S.Z. executed a POA naming J.M. and her other son, R.Z., as her primary co-agents. On July 31, 2015, alleging S.S.Z. was incompetent, J.M. petitioned for temporary guardianship of S.S.Z.'s person and estate and nominated herself as guardian. On the same day, S.S.Z., through private counsel, executed durable and medical POAs, naming T.Z. as primary agent and R.Z. as substitute, telling her attorney that J.M. "was being very nasty to her." J.M. withdrew her petition. Soon after, the court granted the County's petition to appoint a corporate guardian as temporary guardian of S.S.Z.'s estate.
¶4 On August 25, the County petitioned for permanent guardianship over S.S.Z.'s person and estate. Contending the POAs were invalid because S.S.Z. was incompetent when she executed them and, perhaps, unduly influenced by T.Z., the County nominated a corporate guardian and filed a second petition for S.S.Z.'s protective placement in an assisted living facility. T.Z. again objected to the petitions, arguing that her advance planning documents made a guardianship unnecessary and should be enforced.
¶5 In November 2015, a lengthy hearing was held on the petitions. In a fifty-three-page oral decision, the circuit court recapped the testimony of all twenty-two witnesses, made extensive findings, addressed the conflicting evidence, and explained the law that informed its ruling. The court concluded that the County failed to prove by clear and convincing evidence that S.S.Z. did not have the capacity to execute the POAs and further concluded that her advance planning made a guardianship unnecessary. See WIS. STAT. § 54.46(1)(a)2. The court denied the petitions, vacated its earlier order for temporary guardianship, and revoked the corporate guardian's letters of temporary guardianship.
¶6 The parties then went to battle over attorneys' fees. The court awarded fees to S.S.Z.'s and T.Z.'s counsel but denied T.Z.'s claim for those he incurred in litigating the fee motion. This appeal and cross-appeal followed.
I. The Appeal
¶7 The County opens with a challenge to the award of attorneys' fees.[3] We choose to first address whether the circuit court erroneously exercised its discretion in denying the County's guardianship petition despite the POAs. The County asserts that the POAs were invalid because S.S.Z. either lacked the mental capacity or was unduly influenced to execute them.
A. Mental Capacity/Competency
¶8 As case law specifically addressing mental capacity vis-à-vis POA execution is lacking, we turn to cases addressing it in the context of capacity to execute a valid will. Testamentary capacity requires that an individual have the mental capacity "to comprehend the nature, the extent, and the state of affairs of his [or her] property." O'Brien v. Lumphrey , 50 Wis. 2d 143, 146, 183 N.W.2d 133 (1971). "A perfect memory is not an element of a testamentary capacity," but the person "must have a general, meaningful understanding of the nature, state, and scope of his [or her] property ...." Id. Where lack of testamentary capacity is alleged and the court sits without a jury, the court's finding on that issue will be affirmed unless it is clearly erroneous. See Swartwout v. Bilsie , 100 Wis. 2d 342, 354, 302 N.W.2d 508 (Ct. App. 1981) ; see also Noll v. Dimiceli's, Inc. , 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983) ("clearly erroneous" and "great weight and clear preponderance" tests essentially the same).
¶9 As the circuit court often used "competency" and "capacity" interchangeably, we consider the concept of competency under WIS. STAT. § 54.10(3). At a hearing on a guardianship petition based on alleged incompetency, the petitioner must prove by clear and convincing evidence that the proposed ward is incompetent within the meaning of § 54.10(3)(a). The circuit court's factual findings will not be overturned on appeal unless clearly erroneous. WIS. STAT. § 805.17(2) ; see also Coston v. Joseph P. , 222 Wis. 2d 1, 22, 586 N.W.2d 52 (Ct. App. 1998). Whether the evidence meets the legal standard for incompetency presents a question of law that we review independently. Cheryl F. v. Sheboygan Cty. , 170 Wis. 2d 420, 425, 489 N.W.2d 636 (Ct. App. 1992).[4]
¶10 The court expressly noted S.S.Z.'s advance planning through establishing the POAs. The County contends it improperly focused on that single factor without regard to the other fifteen. The court's decision belies that notion.
¶11 The court's decision also comports with the statute. First, upon a finding of incompetency, the circuit court may appoint a guardian but, before doing so, "shall consider" sixteen factors. WIS. STAT. § 54.10(3)(a), (c). The court "shall dismiss the petition," however, if it finds that, contrary to the allegations of the petition, the proposed ward is not incompetent. WIS. STAT. § 54.46(1)(a) 1.a. The court did not find that S.S.Z. was incompetent.
¶12 Second, "[a]dvance planning by the ward ... renders guardianship unnecessary," WIS. STAT. § 54.46(1)(a)2. The court's express mention of S.S.Z.'s advance planning was responsive to the County's guardianship petition, which contended that the court focused solely on one factor to the exclusion of the other fifteen and that her incompetency invalidated the POAs.
¶13 Third, the court's oral review of every witness's testimony shows that the court considered the other factors. Besides Dr. Batterman, S.S.Z.'s examining psychologist, the witnesses included S.S.Z.'s estate planning attorney, her former investment advisor, and her children; non-family members with personal ties to her; and County and senior center workers familiar with geriatrics, dementia care, and with S.S.Z. herself. Several of the latter group observed S.S.Z.'s interactions with T.Z. and J.M. and/or heard S.S.Z.'s comments about them. The statute does not require a court to tick through each factor on the record. We see no error in the court's procedure.
¶14 As to the substance, the court allowed as how the evidence regarding S.S.Z.'s competence could go either way. There was evidence that S.S.Z. was diagnosed with early dementia in 2012 and with Alzheimer's in 2015; exhibited poor short-term memory and at times was not oriented to the date or day; had issues with organization and food storage; spent large sums of money on items from infomercials; and was believed by Dr. Batterman to be incompetent to manage her financial and health care affairs.
¶15 There also was evidence that S.S.Z.'s estate planning attorney believed her to be of sound mind when she established the POAs on July 31, 2015, observed no impaired memory, and said S.S.Z. independently articulated what her wishes were and whom she trusted. The attorney's assistant testified that she, too, found S.S.Z. to be lucid and appropriate, and said S.S.Z. told her that she had felt pressured into signing the earlier POA documents naming J.M. as her primary co-agent.
¶16 The court paid special heed to Dr. Batterman's testimony and report. Dr. Batterman evaluated S.S.Z. on August 10, 2015, ten days after S.S.Z. executed the POAs on July 31. Dr. Batterman testified that she did not review S.S.Z.'s medical records, or psychological records, if any, that she believed S.S.Z. was in the "mid to moderate" stage of Alzheimer's and, agreeing that persons with dementia can have periods of lucidity lasting from moments to hours, that S.S.Z. may have been lucid when she executed the POAs. Dr. Batterman also opined in her August 12 preliminary report and again in her August 25 final report that S.S.Z. had the capacity to execute a will, and testified that it was "probable" there was no change in S.S.Z.'s mental status between July 31 and August 10.
¶17 Having heard conflicting evidence, some of it "shaky," the court made careful findings and refused to "guess," saying it was the County's job to persuade the court. The court specifically found that Dr. Batterman's testimony did not assist the County in meeting its burden of proof. The court found that Dr. Batterman failed to sufficiently explain the difference between her conclusion that S.S.Z. was competent to execute a will but not the POAs and that, by not reviewing S.S.Z.'s medical records, she "[d]id not get a complete picture" of S.S.Z. The court concluded that the doctor's opinion "was not based upon sufficient facts or data, was not the product of reliable principles and methods."
¶18 We cannot find that the court erred. The fact that S.S.Z. had memory problems, developed dementia, and later was adjudicated incompetent may be "peripherally relevant." See Becker v. Zoschke , 76 Wis. 2d 336, 345, 251 N.W.2d 431 (1977). Testators may have lucid intervals during which they possess sufficient testamentary capacity. Sorensen v. Ziemke , 87 Wis. 2d 339, 345, 274 N.W.2d 694 (1979). The court's finding that S.S.Z. was competent at the relevant time is not clearly erroneous. As the County did not establish that S.S.Z. was incompetent when she signed the POAs, her advance planning rendered a guardianship unnecessary on that basis. See WIS. STAT. § 54.46(1)(a)1.-2.
B. Undue Influence
¶19 As noted, the County also contends S.S.Z.'s POA documents are invalid because they were the product of T.Z.'s undue influence. The County thus had to prove by clear, satisfactory, and convincing evidence that T.Z.'s influence over S.S.Z. was undue and overreaching, causing her to act as he intended, that is, that her "free agency ... ha[d] been destroyed." See Sensenbrenner v. Sensenbrenner , 89 Wis. 2d 677, 685-86, 278 N.W.2d 887 (1979) (citation omitted).
¶20 Undue influence may be proved under either the two-element or four-element test. See Hoeft v. Friedli , 164 Wis. 2d 178, 184-85, 473 N.W.2d 604 (Ct. App. 1991). The two-element test requires proof of a confidential or fiduciary relationship coupled with suspicious circumstances surrounding the creation of the challenged documents. See id. at 184. The four-element test requires proof of susceptibility to undue influence, opportunity to influence, disposition to influence, and a coveted result. Id. at 185. The court found that the County failed to prove either test's elements. We agree.
¶21 Under the two-element test, nothing besides a mother-son relationship was shown here. That ordinarily does not create a confidential relationship. Mielke v. Nordeng , 114 Wis. 2d 20, 27-28, 337 N.W.2d 462 (Ct. App. 1983). T.Z. had no fiduciary duty to his mother before the grant of the POA, which is what creates the fiduciary relationship. See Friedli , 164 Wis. 2d at 187. A "sudden and unexplained change in the attitude," such as S.S.Z. abruptly wanting nothing to do with J.M., can be suspicious. See Patterson v. Jensen , 246 Wis. 319, 360, 17 N.W.2d 423 (1945). Suspicious circumstances must be coupled with a confidential or fiduciary relationship. See id. at 359. Neither exist here.
¶22 We turn to the four-element test. S.S.Z.'s infirmities of old age, by themselves, did not necessarily incapacitate her from making a valid POA. See Rahr v. East Wis. Tr. Co. , 88 Wis. 2d 199, 215, 277 N.W.2d 143 (1979). She lived on her own, attended exercise classes, was in a book club, and, with help from others, tended to her dog, home, and errands. Dr. Batterman acknowledged she could have times of lucidity and opined that she was capable of making a will. Susceptibility has not been proved.
¶23 As to an opportunity to unduly influence S.S.Z., the County did not prove that T.Z.'s opportunity was any more unusual than J.M.'s was when she was designated on the prior POA.
¶24 Disposition to unduly influence "implies a willingness to do something wrong or unfair." Id. at 217. Despite evidence that T.Z. had a history of dishonesty and generally may not be so likeable a guy, unpleasantness does not clearly and convincingly prove a disposition to unduly influence S.S.Z.
¶25 The coveted result element concerns the naturalness of the disposition, id. at 218, and includes obtaining a benefit that that person normally would not receive, the receipt of which is unjust to someone else, Becker , 76 Wis. 2d at 349. "Evidence may make what appears to be an unnatural or unjust will a natural and plausible one." Id. On review of the evidence, naming T.Z. as agent and R.Z. as substitute strikes us as no more per se unnatural than S.S.Z.'s prior designation of J.M. and R.Z. as co-agents to the exclusion of T.Z. so as to demonstrate a coveted result.
¶26 Like Tevye in "Fiddler on the Roof," the court was presented with much on-the-one-hand-but-on-the-other-hand testimony as to both incompetency and undue influence. It acknowledged "some possibility" of undue influence and of good cause to revoke, as it did not think the County would have filed and pursued the guardianship petition were there not. The court concluded that, given the decades-long sibling strife, the County failed to show by clear and convincing evidence either undue influence or good cause to revoke the POAs. The County's dogged rehashing of evidence contrary to that supporting the court's decision does not persuade us that the court erred. Where there is conflicting testimony, the circuit court acting as the finder of fact is the ultimate arbiter of witness credibility, and if more than one reasonable inference can be drawn from the credible evidence, we must accept the inference the court drew. Cogswell v. Robertshaw Controls Co. , 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). The court's findings are not clearly erroneous. It thus was bound to dismiss the petition. See WIS. STAT. § 54.46(1)(a)1.-3.
¶27 We turn to attorneys' fees. Private counsel defended S.S.Z. against both petitions from the outset. The circuit court ordered that, as a guardian was not appointed after the hearing, WIS. STAT. § 54.46(3)(c) made the County "liable for any fees due ... the proposed ward's legal counsel." It further ordered that the fees must be paid at the rate customarily charged in the locality, not at public defender rates.
¶28 The County argues that § 54.46(3)(c) is unconstitutional as applied because requiring a county agency to pay a ward's full private attorneys' fees violates the public purpose doctrine, which "mandate[es] that public appropriations may not be used for other than private purposes." Town of Beloitv. County of Rock , 2003 WI 8, ¶ 20, 259 Wis. 2d 37, 657 N.W.2d 344.[5] T.Z. and the Intervenor contend the County forfeited the constitutional challenge by failing to raise it until seven months after the guardianship and protective placement hearing when it moved to stay enforcement of the judgment.
¶29 Claims of constitutional error may be deemed forfeited if a timely objection is not made. State v. Pinno , 2014 WI 74, ¶¶ 7-8, 356 Wis. 2d 106, 850 N.W.2d 207. The County responds that, rather than a new issue, this simply is an additional argument in support of a preserved issue, the impropriety of the fee order. On these facts, that is splitting hairs. As an arm of the State, the County cannot contest the constitutionality of a statute. Columbia Cty. v. Board of Trs. , 17 Wis. 2d 310, 317, 116 N.W.2d 142 (1962).
¶30 T.Z. and the Intervenor also contend the County's constitutional challenge must fail because the County did not effect service on the attorney general. See Kurtz v. City of Waukesha , 91 Wis. 2d 103, 117, 280 N.W.2d 757 (1979). The County replies, without proof, that it served a copy of its appellate brief on the AG, and, in any event, that the service rule applies only in declaratory judgment actions. It is mistaken. Service on the AG is required in all cases involving a constitutional challenge to a statute. Id. at 116-17.
¶31 The County next argues that the circuit court misconstrued WIS. STAT. § 54.46(3)(c), yielding the "absurd result" of ordering it to pay S.S.Z.'s private attorneys' fees at customary local rates in a proceeding under both WIS. STAT. chs. 54 (guardianship) and 55 (protective placement). Statutory interpretation is a question of law that we review de novo. Reyes v. Greatway Ins. Co. , 227 Wis. 2d 357, 364-65, 597 N.W.2d 687 (1999). If the statutory language unambiguously sets forth the legislative intent, we do not look beyond it, but simply apply the statutory provision to the case at hand. Id. at 365.
¶32 Both chapters have an attorney fee provision. WISCONSIN STAT. § 54.46(3)(c), a fee-shifting statute, provides that where a guardian is not appointed after a hearing on the guardianship petition, "the petitioner is liable for any fees due ... the proposed ward's legal counsel." (Emphasis added.). WISCONSIN STAT. § 55.105(1), by contrast, provides that where an individual has a right to be represented by counsel, he or she "shall" be referred to the State Public Defender (SPD). While the person is entitled to retain private counsel, it is "at his or her own expense." Sec. 55.105(3).
¶33 T.Z. argues that WIS. STAT. § 55.10(4) provides that "[s]ection[ ] ... 54.46 ... appl[ies] to all hearings under ... chapter [55]," and thus incorporates the guardianship fee-shifting provision in § 54.46(3)(c). Section 54.46(3)(c) does not limit "any fees" to the guardianship portion of the petitioner's action. Therefore, he asserts, while the County filed a petition for guardianship and protective placement, it was liable for any fees S.S.Z. incurred defending against both.
¶34 The County concedes responsibility for some of S.S.Z.'s attorneys' fees but contends it should not be forced to pay more than "the public defender's minimal charge" because S.S.Z. chose private counsel. In fact, it argues, as WIS. STAT. § 55.105(1) mandates an SPD referral in protective placement cases, the public defender is "required" to represent the individual for both that proceeding and for the guardianship proceeding. See WIS. STAT. § 54.42(1)(c). Thus, S.S.Z. could have obtained "adequate legal representation" without "difficult[y] or inconvenien[ce]," but, having exercised her right to retain private counsel, she proceeded at her own expense. See § 55.105(3)
¶35 The circuit court rejected SPD availability as a reason to deny or reduce S.S.Z.'s fee request. It emphasized that the choice to proceed with a public defender or to retain private counsel belongs to the party whose liberty is at stake. The court reasoned:
It would make little sense for [ WIS. STAT. § 54.46(3)(c) ] to indicate that the petitioner "is liable for any fees due ... the proposed ward's legal counsel" if the statute did not contemplate the right to be reimbursed for private counsel; otherwise, the statute could simply enough refer to liability for fees or costs due the public defender ... rather than indicate that "any fees due" to "legal counsel" are shifted.
¶36 We agree. We presume the legislature chooses its words carefully and precisely to express its intended meaning. Ball v. District No. 4, Area Bd. , 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984). Accepting the County's assertion that it should be responsible only for the sum a public defender would have charged would require reading into WIS. STAT. § 54.46(3)(c) language limiting awards to public defender-based fees. We may not do so. See Monroe Cty. DHS. v. Luis R. , 2009 WI App 109, ¶ 42, 320 Wis. 2d 652, 770 N.W.2d 795.
¶37 The County says what makes little sense is the part of the court's logic that, for a protective placement petition, counsel of one's own choosing is at the person's own expense but it is not for a guardianship petition, a prerequisite to protective placement, see WIS. STAT. § 55.075(3), even if simultaneously prosecuted. The County thus argues that, at minimum, the attorneys' fees should be apportioned at least between the guardianship and protective placement components, and perhaps the discretionary fees related to litigation over T.Z.'s POA. See WIS. STAT. § 244.20(5)(b).
¶38 The circuit court rejected that proposition. It concluded that while the legal services technically were for separate issues, they were too tightly knit to unravel into discrete fee strands to determine which applied to guardianship, which to protective placement, and which to the POA matter. It stated: "The parties proceeded on all matters together as a whole; appeared in court on all matters together; filed papers that touched on the matters together; and called witnesses who testified on issues touching on each matter." As the result was wholly in favor of S.S.Z. and against the County, the court concluded that full fees were justified. See Hensley v. Eckerhart , 461 U.S. 424, 435 (1983). We agree.
¶39 Pressing on, the County argues that the common law "doctrine of necessaries" voids S.S.Z.'s retention of private counsel. That doctrine provides that "[a]ll contracts made by an incompetent are void ... except contracts for necessaries at reasonable prices." See Flessas v. Marine Nat'l Exch. Bank , 8 Wis. 2d 32, 36, 98 N.W.2d 430 (1959). The County reasons that private counsel was not "a necessary," as the court was required to refer S.S.Z. to the SPD which, in turn, was required to appoint counsel regardless of indigency. WIS. STAT. § 55.105(1). Had a public defender been appointed under the petition for protective placement, the same public defender also would have represented S.S.Z. for the guardianship proceeding. See WIS. STAT. § 54.42(1)(c).
¶40 The County has forfeited this issue. Despite being aware that S.S.Z. had private counsel at the outset, the County never objected to the appearance of her private attorneys nor proposed a public defender referral until S.S.Z. petitioned the circuit court for an award of fees.[6] The County's query how it "was supposed to know the circuit court failed to make the public defender referral" is to no avail. It certainly knew S.S.Z. was represented throughout by private counsel and could have asked the court to make an SPD referral. Indeed, the County even protested at one point when S.S.Z. sought an adjournment to avoid bringing in another private attorney at additional expense.
¶41 In any event, the County has not shown that private counsel was unnecessary. As the circuit court noted:
The choice to retain private counsel, or to elect a public defender, belongs to the party whose liberty is at stake.... [T]he case involved [S.S.Z.'s] personal liberty interests, as well as her right to direct her own affairs by naming her own son as her [POA].... [T]he court is satisfied that she valued her choice to such a degree that she would pay a premium to defend it in court.... The fees incurred were substantial, and it was known that those fees would come out of pocket absent a win. The defenses to the action were legitimate and strong. Awards of costs and fees in similar cases are rare, because rarely is a guardianship case filed that does not result in an order for guardianship. It is in those rare cases that fees are appropriate.
¶42 The guardianship proceeding also involved litigation over the POAs. The County asserts that the circuit court wrongly imposed fee liability against it under WIS. STAT. § 244.20(5) for POA attorneys' fees T.Z. incurred to defend his agent status, as the statute does not have a fee-shifting provision. Rather, it provides only that, in a proceeding that confirms the validity of a POA or mandates acceptance of it, the person requesting acceptance of the POA-here, T.Z.-may request the court to order the person who refuses to accept the POA-here, the County-to pay reasonable attorney fees and costs. Sec. 244.20(5)(b). The statute implies an exercise of the court's discretion.
¶43 T.Z. did not initiate this matter or choose to be involved in it. To the contrary, the County essentially transformed the guardianship proceeding into a challenge to S.S.Z.'s POAs and, by alleging undue influence, to T.Z.'s suitability to serve as her agent. T.Z.'s legal fees in defending the validity of his agency became necessarily intertwined with whether S.S.Z. competently executed her durable POA. See WIS. STAT. § 244.41(7) ("An act performed by an agent pursuant to a power of attorney has the same effect and inures to the benefit of and binds the principal and the principal's successors in interest as if the principal had performed the act."); Knight v. Milwaukee Cty. , 2002 WI 27, ¶ 25, 251 Wis. 2d 10, 640 N.W.2d 773 ("Whatever an agent lawfully does is the act of the principal."). If T.Z.'s fee petition did not fall squarely within the fee-shifting framework of WIS. STAT. § 54.46(3)(c), it at least implicated the court's discretion to order reasonable attorney fees and costs under WIS. STAT. § 244.20(5)(b).
¶44 Noting that both WIS. STAT. §§ 244.20(5) and 814.045(1) address awarding reasonable attorney fees, the court expressly applied WIS. STAT. § 54.46(3)(c) because "[a]s the more specific statute, [§] 54.46(3)(c) should apply on its own terms-'any fees'-independent of either [§] 244.20(5) or [§] 814.045." We agree.[7]
¶45 An attorney fees award is left to the circuit court's discretion, a determination we uphold as long as the court "employ[ed] a logical rationale based on the appropriate legal principles and facts of record." Kolupar v. Wilde Pontiac Cadillac, Inc. , 2004 WI 112, ¶ 22, 275 Wis. 2d 1, 683 N.W.2d 58 (citation omitted; alteration in original).
¶46 The court here concluded that it "agree[d] with and adopt[ed] the facts and legal conclusions regarding the reasonableness of the fees" S.S.Z. and T.Z. set forth in their fee petitions and supporting documents. The court found that: the hours spent and the rates charged appropriately reflected the novelty and complexity of the issues and the skill required; the matter involved firm time limits, see WIS. STAT. § 54.44(1)(a), multiple evidentiary hearings, court appearances, and pre-trial filings, extensive briefing, and significant trial preparation; the County refused T.Z.'s settlement offers, even after the guardianship was denied; the defenses to the action were "legitimate and strong"; a comparison to costs and fees in similar cases is difficult because guardianship cases typically result in an order for guardianship; the case involved S.S.Z.'s personal liberty interests and her right to direct her own affairs by naming her son as her POA; S.S.Z. knew that her substantial fees would come out of her pocket if she did not prevail yet valued her choice to such a degree that she would pay a premium to defend it in court; and the rare nature of the case and outcome made awarding fees appropriate. The court properly exercised its discretion in finding the fees reasonable.
¶47 Based on the circuit court's findings and conclusion, we disagree with the County that the attorneys' fees award far exceeds what is reasonable and necessary to defend a proposed ward in WIS. STAT . chs. 54/55 proceedings.[8] We also do not consider its argument that "[p]rivate attorney fees are not reasonable or necessary if the ward has not been offered and rejected services public defender representation or the ward is unable to obtain counsel," as it is unsupported by citation to authority. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
II. Cross-Appeal
¶48 T.Z. cross-appeals from the "Order Regarding Fees" on grounds that he also should have been awarded the attorneys' fees he incurred in litigating the fee motion. The circuit court denied his request, reasoning that the case was concluded and S.S.Z.'s liberty interests were secured.
¶49 We agree with T.Z. that he also is entitled to an award of the attorney fees he expended in litigating the fee motion and in successfully defending this appeal. See Chmill v. Friendly Ford-Mercury of Janesville, Inc. , 154 Wis. 2d 407, 415, 453 N.W.2d 197 (Ct. App. 1990) (party may recover reasonable fees and disbursements incurred to litigate fees under fee-shifting statute unless precluded by language of the statute). Thus, on remand, the circuit court shall award him whatever costs and fees it finds T.Z. reasonably incurred in litigating the fee motion and in defending this appeal.
By the Court. -Order affirmed in part; reversed in part and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

We granted the motion of the law firm of von Briesen & Roper, S.C. (the Intervenor), which represented S.S.Z., to participate in the appeal as intervenor-respondent.

The Intervenor submits that, if T.Z. prevails, the law of the case dictates that it, too, is entitled to its attorneys' fees attributable to litigating the fee motion and this appeal. See Novell v. Migliaccio , 2008 WI 44, ¶ 64, 309 Wis. 2d 132, 749 N.W.2d 544. Wisconsin Stat. Rule 809.10(2)(b) (2015-16) provides, however, that "[a] respondent who seeks a modification of the judgment or order appealed from ... shall file a notice of cross-appeal." The Intervenor did not. The matter of litigating the fee motion and the appeal thus is not before us as to the Intervenor. It may present the issue to the circuit court on remand if it so desires.
All references to the Wisconsin Statutes are to the 2015-16 version unless noted.

The Intervenor advises that S.S.Z. was placed under guardianship during the pendency of the post-hearing litigation and posits that whether the circuit court properly denied the petition before us, therefore, is moot. We must address the merits because a determination that the court erred would affect costs and fees.

Coston v. Joseph P. , 222 Wis. 2d 1, 586 N.W.2d 52 (Ct. App. 1998), and Cheryl F. v. Sheboygan Cty. , 170 Wis. 2d 420, 489 N.W.2d 636 (Ct. App. 1992), were decided when guardianships were governed by Wis. Stat. ch. 880 (1993-94); "incompetent" then was defined in § 880.01(4). Chapter 880 was repealed and Wis. Stat. ch. 54 was created by 2005 Wis. Act 387, effective May 25, 2006. "Incompetent" is not contained in the current definition section, Wis. Stat . § 54.01, but the necessary findings are laid out in Wis. Stat. § 54.10(3)(a).

For the first time, the County also contends that the fee award implicates the doctrine of parens patriae , whether Wis. Stat. ch. 244 "control[s]" Wis. Stat. chs. 54 and 55, whether the circuit court should have conducted a colloquy to assess S.S.Z.'s ability to obtain counsel, and whether she was too impaired to choose her own counsel. A litigant who fails to raise a claim in circuit court forfeits the right to raise the issue on appeal. See State v. Caban , 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997).

The County contends it attempted to inquire about private counsel's representation of S.S.Z. but abandoned the inquiry because it appeared the court commissioner did not believe it relevant. Other than that, the County never objected to a public defender referral or appointment not having been made. We stand by forfeiture.

The court then compared Wis. Stat. § 54.46(3)(a) and (c). Under § 54.46(3)(a), if a guardian is appointed, the petitioner is entitled to "reasonable attorney fees and costs." If, as here, a guardian is not appointed, however, the court noted that § 54.46(3)(c)"simply establishes that 'the petitioner is liable for any fees' ... [and] says nothing about weighing the equities and says nothing about the reasonableness of the fees."
While we see the issue as being whether the County is liable for attorneys' fees at private local rates versus public defender rates, not whether Wis. Stat. § 54.46(3)(c) allows fee awards without regard to their reasonableness, we affirm the court's action because it did go on to consider reasonableness under Wis. Stat. § 814.045(1)(a)-(p).

The County refused T.Z.'s several attempts to resolve the case without a hearing by requesting mediation and offering to settle.